Payton v. McQuown, Admr.

*CASE 103—PETITION EQUITY—JUNE 21.

## Payton v. McQuown, Admr.

APPEAL FROM BARREN CIRCUIT COURT.

1. SUBMISSION BY PLAINTIFF UNDER MISTAKEN BELIEF THAT NO ANSWER HAD BEEN FILED.—This equitable action to enjoin the collection of a judgment having been submitted on motion of plaintiff when no reply had been filed the chancellor did not abuse his discretion in overruling plaintiff's motion to set aside the submission, although it was supported by the affidavit of his attorneys to the effect that they did not know when they asked the submission that an answer had been filed. It is immaterial that the answer, which was due on the third day of the term at which it was tried, was not filed until a later day, as it was then filed in open court without objection.

2. INJUNCTION.—While the fact that the grounds as set forth in the petition are insufficient to justify the injunction should properly have been taken advantage of by a motion to dissolve the injunction, still it was a proper matter to be considered by the court in disposing of the case as it did.

3. SAME.—The negligence or improper conduct of an attorney employed to defend a suit at law, or his failure or neglect to defend the action, will not justify an injunction against the judgment.

4. DEPUTY CLERK CAN NOT GRANT INJUNCTION.—The power conferred by sec. 273 of the Civil Code of Practice upon the clerk of the circuit court to grant an injunction is judicial in its nature, and can

---

*With this case as re- published in 31 L. R. A., 33, is an elaborate note upon the subject of injunctions against judgments.

not therefore be exercised by a deputy. The provision of sec. 678 of the Civil Code that "any duty enjoined by this code upon a ministerial officer may be performed by his lawful deputy" was intended to include only duties which are ministerial in character and such as are to be performed by the officer in his ministerial capacity. The power conferred upon the clerk to grant injunctions is not analogous to the power conferred upon him to issue attachments, which may be done by a deputy.

CARR & MORRIS FOR APPELLANT.

1. The court erred in refusing to set aside the submission, and in arbitrarily assessing damages against appellant without the introduction of any proof or any opportunity being given to introduce proof on the question. (Mallory v. Daubeis' exors., 83 Ky., 239.)

2. The deputy clerk had authority to *issue* the injunction. (Civil Code, secs. 273, 678.)

LEWIS McQUOWN FOR APPELLEE.

1. A new trial or an injunction against a judgment will not be granted on account of the neglect of the agent or attorneys of the party applying for it. (Patterson v. Matthews, 3 Bibb, 80; 1 High on Injunctions (3d Ed.), secs. 210, 216.)

2. The deputy clerk had no power to grant the injunction, and the fact that it was granted by him is fatal to its validity. (19 Am. & Eng. Enc. of Law, 461, 478; Commonwealth v. Jones, 10 Bush, 749; Civil Code, sec. 273.)

　Section 678 of the Civil Code refers only to the performance of *ministerial* duties. (Civil Code, sec. 562; Hartman's adm'r v. Hartman, 15 Ky. Law Rep., 368.)

3. Even if the deputy clerk has the same power to grant an injunction that his principal has, the principal has no such power unless the judge of the court is absent from the county, and as that fact does not appear from the petition it was proper for that reason to dissolve the injunction. (Jacobs' adm'r v. L. & N. R. Co., 10 Bush, 263.)

4. The affidavits filed disclosed no cause for setting aside the order of submission.

JUDGE EASTIN DELIVERED THE OPINION OF THE COURT.

This equitable action was brought by appellant, in the Barren Circuit Court, against appellee and the sheriff of Hart county, Kentucky, for the purpose of enjoining the

levy and collection of an execution then in the hands of said sheriff, and which had been issued on a common law judgment rendered by the said Barren Circuit Court in favor of appellee against appellant.

It is, in substance, alleged by appellant in his petition, that he was employed by one Mary E. Burks, administratrix of John Burks, deceased, to aid her in collecting the assets and paying the debts of the estate of her intestate, and that, while so engaged, he accepted an order given on himself by the said administratrix to appellee, with the understanding that he was to pay it out of funds that he might collect for the estate of said intestate and not otherwise, and that the execution sought to be enjoined was issued on a judgment rendered in an action at law brought by appellee against him on this accepted order. It is further alleged that he had not, at the time said suit was brought, nor at any time after the acceptance of the order, any money or assets belonging to the estate of said Burks in his hands with which to pay said order, or any part thereof; that, upon being served with process in the action, he went to Glasgow and laid these facts, together with the fact that he was in no way individually liable on said claim, before a practicing attorney of that bar, whom he requested to prepare and file an answer for him in the action, and who promised and agreed to do so; that, supposing that this would be done, and supposing that the action would thereupon stand continued for that term, he then returned to his home in Hart county, Kentucky, but that, for some reason unknown to him, the said attorney failed to file the answer or make defense for him, and the appellee wrongfully and fraudulently took the judgment against him on which the execution sought to be enjoined was issued.

The petition further charges that Lewis McQuown, who,

as administrator of W. H. Botts, deceased, is appellee here-in, and who recovered said judgment against appellant, is also the attorney for the estate of said John Burks, de-ceased, and, as such, has directed parties indebted to said estate not to pay their indebtedness to appellant, but to pay to another, and that, in consequence thereof, appellant will never be able to collect anything more belonging to said es-tate or to pay the demand of appellee, and concludes with the usual averment that, unless an injunction be issued, his individual property will be levied on and sold, and he will be subjected to great and irreparable loss and injury.

On the day on which this petition was filed, to-wit, Au-gust 24, 1893, and without notice to appellant, an order of injunction was entered, and an injunction as prayed for was issued, restraining the sheriff from levying said execution on the property of appellant, and from taking any further steps thereunder, until the further order of the court, which was in due time executed upon said sheriff.

At the succeeding term of the court, not, however, on the third day of the term, which commenced on the third Monday in November, but on the 13th day of December, 1893, appellee filed an answer controverting all the allega-tions of the petition and pleading affirmatively the facts attending the giving of the order on appellant by Mrs. Burks and its acceptance by appellant. That order, with the ac-ceptance thereon, is made a part of the answer and shows on its face that it was drawn on appellant and accepted by him individually, and without qualification, as to the man-ner in which or the fund from which it was to be paid.

No motion was made to dissolve the injunction, no reply was filed or offered to be filed to this answer, no proof was taken by either party, but, at the next term of the court, to-wit, on March 12, 1894, it appears, singularly enough, in

view of the state of the record, that the action was submitted for judgment. *on motion of appellant.* On the next day, March 13, 1894, appellant moved to set aside the order of submission, and, in support of that motion filed the separate affidavits of the two attorneys who were representing him in the case. On the 17th day of March, the court below overruled this motion to set aside the submission, dismissed appellant's petition and dissolved the injunction, with damages at the rate of ten per cent. on the amount of the execution enjoined and costs, and from that judgment this appeal is prosecuted.

The principal question to be considered is whether or not the motion to set aside the order of submission was properly overruled. The statements of the affidavits of counsel filed in support of this motion, practically amount to but little more than the statement of each of these gentlemen that he did not know that an answer had been filed, at the time the order of submission was entered. It is true that one of these affiants says, "that if he was present in court on the day said answer was offered and filed, that he did not hear said motion; and said answer was not in the papers of said suit when the November term ended," but he does not say how he knows this, or that he ever inquired for or looked at the papers of the case to see whether or not an answer had been filed. The other affiant says that he was detained from court by sickness during several days of the November term, but that "in a few days after said last term," he looked through the papers in the suit and that there was then no answer among them. This must have been in December, and he does not pretend ever to have made any further investigation, though nothing further was done in the case until the 12th day of March following,

when the case was submitted for judgment, either on his motion or the motion of his partner.

Both affiants lay much stress on the fact that appellee's answer was due on the third day of the November term, and that no order was made extending the time for filing same. But it is not pretended that any agreement was made that one should be filed at a later day in the term, nor does it appear that appellant or his counsel were in any way led to believe that none would be filed, but, on the contrary, it does appear that this answer was filed, without objection, in open court, on the 13th day of December, at that same term of court.

One of appellant's counsel says in his affidavit that he is informed that his client is at that time at home with a sick wife, and this may account in some measure for the fact that, although counsel discovered on March 13th that the answer had been filed and the motion to set aside the order of submission was not considered until March 17th, yet no reply controverting the allegations of the answer was tendered or filed, and no proof offered to sustain the averments of the petition. But, however this may be, we are unable to find anything in either of these affidavits sufficient to explain or overcome the fact that this answer was allowed to remain in the record uncontroverted from December 13, 1893, or to rebut the conclusion that, by the exercise of ordinary diligence, counsel could and would have discovered this fact before they voluntarily entered the order of submission on March 12, 1894. Upon these considerations alone it seems to us that the chancellor might, as he did, in the exercise of a reasonable discretion, have refused to set aside the order of submission.

But, in support of the action of the court below, in overruling this motion and dismissing the petition, another very

potent consideration is found in the fact that the grounds, as set forth in the petition on which this injunction was asked, are insufficient to justify it.   We are aware that this could and perhaps should properly have been taken advantage of by a motion to dissolve the injunction, and that no such motion was made, but still it is not to be entirely excluded on this motion made after the entire case had been submitted for judgment.

This injunction was asked, as above stated, against a common law judgment, on the ground that appellant had requested an attorney, to whom he had submitted the facts constituting his defense, to prepare an answer for him, that he had relied upon this attorney's promise to do so and had gone to his home in another county, supposing that his answer would be filed and the case be continued, but that, for some reason unknown to him, the attorney had failed to file the answer.   This, in our opinion, is wholly insufficient to entitle appellant to relief by injunction against a judgment by default rendered against him under such circumstances. Aside from the personal negligence thus confessed on part of appellant himself, in going off to another county and never looking after his case, in which, as we understand, the default judgment was not rendered till the second term after process was served, is the fact that the gross and unexplained negligence which he thus charges upon his attorney, instead of excusing him, is, under the law, to be treated as his own negligence.

This doctrine was laid down in one of the early decisions of this court, and, so far as we are aware, has not been materially modified or departed from.

In Patterson v. Matthews, 3 Bibb, 80, this court said: "It is a settled rule that a new trial ought not to be awarded on account of the neglect of the agent or attorney of the

parties applying for it; for such neglect is equivalent to the neglect of the party himself, and he may have a remedy over against his agent or attorney."

And, in considering this exact question, Mr. High lays down the rule in this language, to-wit:

"The negligence or improper conduct of an attorney employed to defend a suit at law, or his failure or neglect to defend the action, will not justify an injunction against the judgment." 1 High on Injunctions, sec. 210 (3d Ed.)

This being the law, the question of the validity or invalidity of the defense which might have been made to the action, becomes wholly immaterial, and it is, therefore, unnecessary to consider the question how far appellant could have availed himself of the defense; that it was understood that he was not to be individually bound on this accepted order, but was only to pay it out of funds collected for John Burks' estate, when, by the terms of the writing itself, the obligation was personal and unqualified. No matter what his defense may have been, having failed, either by his personal negligence or that of his attorney, to answer or make defense, he was not entitled to the relief sought in this action; and, although no motion was made to dissolve the injunction on this ground, yet it was a proper matter to be considered by the court below in disposing of the case as it did.

There is still another question pertaining more directly to the validity of this order of injunction, and which might properly have been raised on a motion to dissolve, but which might also properly have been considered by the court on the hearing, and that is the fact that this injunction was granted by the deputy clerk of the Barren Circuit Court. The order is signed "Jas. B. Martin, C. B. C. C., by J. H. Bohannon, D. C."

Has a deputy clerk power to grant such an order? The clerk certainly has this power, under certain circumstances, as it is provided in section 273, Civil Code of Practice, that "the injunction may be granted at the commencement of the action, or at any time before judgment, by the court, or by any circuit judge, or by the clerk of the court, or the county judge, if the judge of the court be absent from the county; or by two justices of the peace, if the judge and the clerk of the court and the county judge be absent from the county." And, if the exercise of this power to grant injunctions were merely ministerial in its character, it would be conceded that the power thus conferred on the clerk might be exercised by his deputy. By section 678 of the Civil Code of Practice, it is provided that "any duty enjoined by this code upon a ministerial officer, and any act permitted to be done by him, may be performed by his lawful deputy." But this language, in our opinion, in referring to duties to be performed, and acts permitted to be done, by a ministerial officer, is intended to include only duties and acts which are ministerial only in character and such as are to be performed and done by the officer in his ministerial capacity. When, however, a ministerial officer, or one whose general duties are of that character, is clothed, in special cases, as may be done, with the power to perform acts in their nature judicial or *quasi* judicial, we do not think it was the purpose or intention of the legislature, by this section of the code, to authorize the performance of such acts by a deputy. The clerk of a court is, strictly speaking, a ministerial officer, but that this power of granting injunctions, conferred upon him by the section referred to is, in its nature, not purely ministerial, but is judicial or *quasi* judicial, seems to us manifest, and that it can not be delegated, either by him or any of the other officers upon whom it is conferred, either to a special

or a regular deputy, seems equally manifest. It is not anal-
ogous to the power conferred upon him to issue attach-
ments, which may be done by a deputy. There he is required
to see that an affidavit in a special form, prescribed by law,
is filed. But here, where an immediate order of injunction
is asked for without notice, as was done in the case before
us, it is expressly provided by sec. 276 of the code, that it
shall not be granted "unless the court or officer, to whom the
application is made, *shall be satisfied*, by the affidavit of the
applicant or by other evidence, that irreparable injury will
result to the applicant if the injunction be not immediately
granted." This requirement clearly demands investigation
and consideration judicial in its character. He is to con-
sider and determine, as a *quasi* judicial officer at least, the
sufficiency of the application, in law and in fact under the
evidence presented, before granting the order.

In defining judicial power this court has said:

"We regard it as an indisputable proposition that where
the inquiry to be made involves questions of law as well
as fact, where it affects a legal right, and where the deci-
sion may result in terminating or destroying that right, the
powers to be exercised and the duties to be discharged are
essentially judicial." Commonwealth v. Jones, 10 Bush,
749.

All the elements entering into this definition of judicial
powers seem to us to exist in this power of granting injunc-
tions. But the language of the section conferring this
power, as well as the fact that it is conferred on no others
except those whose functions and duties are strictly judi-
cial, seems to us conclusive that this power is intrusted to
the clerk personally, that it is in its nature judicial, and is
one that can not be delegated. By the language of the pro-
vision itself, the power is given to the clerk, and not to his

deputy; it certainly involves the exercise of discretion and judgment, and, under the general rule governing such pow- ers, the person to whom they are delegated and in whom the trust is reposed, can not delegate or intrust their exercise to the judgment and discretion of another. In a certain contingency, the clerk may grant an injunction, and, if the judge, the clerk and the county judge be absent from the county, then two justices of the peace may grant the injunc- tion. If it had been contemplated that the deputy clerk, in any state of case, should have this power, the law would have conferred it, in the event of the absence of the clerk from the county, as it must be presumed that the clerk would leave a deputy in charge of his office, and would have said that, if the judge and the county judge and the clerk and *all his deputies* are absent from the county, then the two justices may act.

We can not believe that it was ever intended to intrust so important a function, involving, as it necessarily does, the exercise of judicial discretion, to every deputy clerk in this Commonwealth, many of whom are wholly without ex- perience, and who, under the laws of this State, may even be under the age of twenty-one years, and we think, there- fore, that the injunction issued in this action was invalid, and should have been dissolved, for the additional reason that it was issued by a deputy clerk.

We are of the opinion that the court below properly dis- solved appellant's injunction and dismissed the petition with damages and costs, and that judgment is affirmed.