# National Union Fire Insurance Company v. Forkner.

(Decided March 22, 1927.)

## Appeal from Clark Circuit Court.

1. Appeal and Error.—Though order granting new trial will be reversed, if based on misconception of law, order based on insufficiency of evidence to sustain verdict will not be reversed, unless abuse of discretion is shown.

2. Appeal and Error.—Where both parties moved for new trial, and court sustained motion of one, the other cannot take advantage of any error committed, since action resulted in identical thing he had asked for; but court is not justified in granting new trial solely because all parties ask for it.

3. Insurance.—In action against insurer of hemp and tow, evidence held sufficient to support verdict for plaintiff, as against insurer's contention that quantity claimed could not have been stored in available space.

4. Trial—Jury is sole judge of whether evidence should be believed.

5. Evidence.—In action on insurance policy covering hemp stored in barn, testimony of witness making calculations as to number of bales that could be stored in compartment of certain dimensions held incompetent.

6. Evidence.—In action on insurance policy covering hemp stored in barn, testimony of witness making calculations as to number of bales that could be stored in compartment of certain dimensions, if competent, held immaterial, since juries are assumed to be capable of making such calculations.

7. Evidence.—In action on insurance policy covering hemp stored in barn, evidence that witnesses had not sold hemp to plaintiff held incompetent, where plaintiff had offered no evidence that he purchased hemp from such witnesses.

8. Insurance.—Where insurer's agent knew that insured had taken additional insurance without having written consent of company, and took no steps to cancel insurance, there was waiver of provision in policy that procuring of such other insurance should render policy void.

9. Insurance.—Where there was dispute as to whether insurer's agent consented to additional insurance or whether he had knowledge of additional insurance, it is question for jury.

10. Insurance.—Evidence held to show that insurer's agent had consented to additional insurance on property, or had knowledge of such insurance and took no steps to cancel policy, where agent's own testimony showed such consent.

11. Insurance.—Where fire policy covering hemp prohibits keeping, using, or allowing of gasoline on premises. and insured violates provision by allowing gasoline to be permanently kept or used there without consent or knowledge of insurance company, policy will be voided.

12. Insurance.—Where agent of insurance company had authority to enter into contract of insurance and issue policy, his act is act of company, and his waiver of provision prohibiting keeping of gasoline on premises is waiver by company.

BEVERLY R. JOUETT for appellants.

PENDLETON & BUSH, O'REAR, FOWLER & WALLACE and ALLEN PREWITT for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

The appellee had insurance policies aggregating $12,500.00 when his barn burned on October 2, 1924. The policies covered the barn and its contents. This controversy is over the quantity of hemp and tow which he had in the barn at the time of the fire. He claims that he had 150,827 pounds of hemp and 10,000 pounds of tow in the barn which was destroyed by the fire. The policy issued by the Sterling Fire Insurance Company for $3,000.00 bears date July 21, 1924. The policy issued by the National Union Fire Insurance Company for $2,500.00 bears date September 2, 1924. He also had a policy in the Twin City Fire Insurance Company for $3,000.00, and another in the same company for $4,000.00, all covering the hemp in his barn. He was paid the amount of insurance on the barn and also for the insurance covering hay, straw, oats, corn and tobacco. The appellants refused to pay the insurance covering the hemp and tow.

On the 13th day of March, 1925, appellee instituted three suits in the Clark circuit court to recover on the policies of insurance, one against the National Union Fire Insurance Company for $2,500.00, one against the Sterling Fire Insurance Company for $3,000.00, and one against the Twin City Fire Insurance Company for $7,000.00. It appears from the briefs that the suit against the Twin City Fire Insurance Company was removed to the federal court. This case involves the other two suits. The petitions in each case alleged that appellee lost 150,827 pounds of hemp of the value of 11 cents per pound, and 10,000 pounds of tow of the value of 6 cents per pound. The insurance companies traversed the allegations of the petition and affirmatively plead as a defense that the policies had been voided (1) because the plaintiff had permitted gasoline to be stored and a gasoline engine to be used in his barn, contrary to the

provisions of the policy and without the written consent of the company as required by the policy, (2) because the plaintiff had misrepresented the quantity and value of the hemp insured at the time the insurance was procured. The Sterling Fire Insurance Company further defended on the ground that plaintiff had obtained additional insurance on his hemp about one month before the fire, contrary to the provisions of the policy, without the consent of said company by indorsement on the policy. The additional insurance was the policy for $2,500.00, issued by the National Union Insurance Company, one of the appellants. In his reply appellee admitted that he had kept a gasoline engine and gasoline in his barn and that he had obtained the additional insurance, but pleaded that the forfeiture had been waived by the companies because the agents who issued the policies knew of the gasoline engine and storage of gasoline and that the agent of the Sterling Fire Insurance Company knew of the additional insurance, and that no indorsement on the policies was necessary.

The first trial of the case was in April, 1925, and the jury failed to agree. Another trial was had in September, 1925, when the jury returned a verdict to the effect that appellee at the time of the fire had only 65,000 pounds of hemp and 10,000 pounds of tow in his barn. When the verdict was returned at the second trial appellants moved the court to enter a judgment for them dismissing the petition on the ground that the difference in the amount found by the jury and that claimed by the plaintiff in his proofs of loss was so great that the court should decide as a matter of law that such fraud had been perpetrated as to void the policies. This motion was overruled by the court. Appellee filed his motion and grounds for a new trial, as did appellants. The motion of appellee for a new trial was sustained and a new trial granted upon the ground that the verdict was not sustained by the evidence. The motion of appellants for a new trial was overruled. The appellants excepted and appealed from the order setting aside the judgment and granting a new trial and filed their bill of exceptions and caused a transcript of the evidence to be made in exactly the same manner as if they were appealing from a final judgment against them.

The case was again tried in April, 1926, when the jury returned a verdict finding that appellee lost in the

fire 150,827 pounds of hemp and 10,000 pounds of tow, and judgment was thereupon entered against the appellants for the full amount called for in the policies. Motion and grounds for a new trial by appellant having been overruled this appeal is prosecuted from the final judgment as well as from the order setting aside the verdict of the jury rendered at the trial in September, 1925.

Every phase of the case has been thoroughly argued in the briefs filed by appellants and appellee. No point seems to have been omitted.

We will first dispose of the contention of appellants that the lower court erred in granting appellee a new trial in September, 1925. The entire record of that trial is before us. The sole ground on which the motion for a new trial was sustained was that the evidence was not sufficient to support the verdict. It has been held by this court that it will reverse the judgment if the lower court erred in granting a new trial, but a reversal can only be had on this ground where the lower court has abused or improperly used his discretion in granting a new trial.

In the case of Ross v. Kohler, 163 Ky. 583, 174 S. W. 36, this court reversed the judgment of the lower court because the order granting a new trial was improper. The new trial was granted in that case by the lower court because of an error of law as the court thought. The case of Perkins v. Ogilvie, 148 Ky. 309, 146 S. W. 735, is quoted from in that case as follows:

"While the trial court is vested with a broad discretion in granting a new trial, yet, if it granted a new trial solely on the ground of an error of law, which in fact was not an error, and the other grounds relied upon are not sufficient to justify its action, it is error, under such circumstances, to grant a new trial."

Neither of these cases is in point because the new trial was granted on the ground of an error of law which in fact was not an error. If the lower court misconceives what the law is and grants a new trial, based on such misconception, this court will reverse on account of error. Louisville College of Dentistry v. Hartford Steam Boiler Inspection and Insurance Company, 185 Ky. 778. It is not a question of discretion in such cases, because the lower court has no discretion as to what the law is. He

must determine the law as it is found and not as he thinks it ought to be.

It is true, however, that the lower court may not grant a new trial on the ground that the verdict of the jury is not sustained by the evidence unless in the exercise of a reasonable discretion. This was so held in the case of Curry v. Fetter, 15 K. L. R. 494. It has also been held that, while circuit courts have a broad discretion in the matter of granting new trials and that this discretion will not be interfered with unless it appears that it has been abused, still where the discretion has been abused this court will reverse a judgment because of the error of the circuit court in granting a new trial. Smith's Admr. v. Louisville Railway Co., 174 Ky. 784, 192 S. W. 875; Nolan's Admr. v. Standard Sanitary Mfg. Co., 33 K. L. R. 745, 111 S. W. 290.

Where this court finds that the first trial was without prejudicial error to the rights of the parties and the lower court erroneously set aside the verdict of the jury and granted a new trial, it will reverse the last judgment and remand the cause with directions to enter a judgment upon the first verdict. L. & N. R. R. Co. v. Ricketts, 21 K. L. R. 662, 52 S. W. 939.

It is insisted by counsel for appellee that this court is not at liberty in this case to determine the question as to whether the lower court abused his discretion in granting the new trial in September, 1925, because appellants lost their right to object to his granting the new trial by asking for a new trial in their behalf. It is admitted by counsel for appellee that the court would not have been justified in granting a new trial because all parties asked for it, as there must always be some good reason for granting a new trial in addition to the fact that both parties desire it. It is insisted, however, that the granting of a new rial to one of the parties is not prejudicial error as to the other party if such other party has placed himself in the position of asking that the thing be done by the court which was done. Where both parties move for a new trial and the court sustains the motion of one of the parties can the other party take advantage of any error that the court may have committed in granting the new trial when in fact the action of the court resulted in the identical thing which the complaining party asked for?

The case of Gullett's Administrator v. Chesapeake & Ohio Railway Co., 182 Ky. 409, 206 S. W. 641, seems to sustain the contenton of appellee that appellants cannot complain of error of the lower court, if it was an error, in granting a new trial at the September term, 1925. The court said:

> "Both parties filed motions and grounds for a new trial, but upon hearing the court overruled plaintiff's motion for a new trial, but sustained defendant's motion and set aside the verdict. Upon the second trial, at which practically the same testimony was introduced by both sides to the controversy, the jury, under the same instructions given upon the first one, returned a verdict in favor of defendants, and plaintiff's motion for a new trial having been overruled, it prosecutes this appeal."

The same thing happened in that case as happened in the instant case except the motion of the plaintiff in the instant case was sustained and the motion of the defendants was overruled. The court then proceeded to a determination of whether the lower court erred in granting the new trial, and said there were two reasons why the action of the lower court in granting a new trial should not be disturbed. The first reason was that trial courts have a broad discretion in the granting of new trials and that such discretion would never be interfered with unless plainly abused. The second reason why the court could not disturb the order of the lower court in granting a new trial was stated as follows:

> "Again, because (b) plaintiff insisted that the first evidence and the judgment pronounced thereon be set aside by filing its motion for that purpose, and it is clearly in no position to complain of that which it insisted upon being done."

The point insisted upon by appellee in this case was decided in the Gullett case. There is no argument in support of the position of the court, and it is stated as a matter needing no argument to support it that where both parties move for a new trial and it is granted to one, the other can not complain. We find no other case in Kentucky where the point has been decided. Appellee cites on his brief the case of Star Bottling Company v. Louisiana Purchase Exposition Company, 240 Mo. 234, 144

S. W. 776, where the court had the identical question
before it.   The court in that case said:

> "Will an appeal lie from an order, *nisi*, granting
> a new trial when both parties litigant asked a new
> trial and one is granted to either? Or, to put the ques-
> tion more pointedly: Will an appellate court review
> and pronounce upon the reasons assigned below for
> granting a new trial, when both parties litigant asked
> for one and one is granted to either?   What griev-
> ance can a litigant have who gets what he asked
> for?   How can he be injured in the way he gets it,
> so long as he gets it?   If the bottling company was
> alone loosed by the new trial, and the exposition
> company was left bound by the old trial, then, in-
> deed, would it have a grievance.   But it is not so; a
> new trial for one is a new trial for both, in all that
> term implies.   It is a loaf baked in the oven of the
> law to be sociably shared by both parties.   Verily,
> withal, the benefits of a new trial, like the rain and
> the dew, descend alike upon the just and the unjust,
> on defendant as well as plaintiff; the terms 'just'
> and 'unjust' being used only for the purpose of the
> simile.

> "As appellant is not aggrieved, it was not en-
> titled to an appeal in a case where its antagonist was
> granted a new trial, and its own motion is overruled.
> Diermann v. Bag Company, 144 Mo. App. 474, 129 S.
> W. 229.   In that case, Gray, J., speaking for the
> Springfield Court of Appeals, holds language in
> point, viz.: 'If the court had sustained appellant's
> motion for a new trial and overruled respondent's
> motion therefor, the case would have been in the
> identical condition that it was when the court over-
> ruled appellant's motion and sustained the respond-
> ent's.   And this being true, the appellant was not
> aggrieved by the action of the court in granting a
> new trial, and the appeal is without merit.  .  .  . '

> "There is a maximum running that every con-
> sent removes error. *'Omnis consensus tollit
> errorem.'*   Sometimes it is expressed in other ways;
> for example, consent always removes the effect of
> error; or consent heals error; or participating in
> error cures the error.   Courts are fond of applying
> that maxim in many ways; for it is a fair and con-

venient rule. For instance, Crum v. Crum, 231 Mo.
loc. cit. 639, 132 S. W. 1070, illustrates its applica-
tion in one phase, and other illustrations abound in
any volume of our reports. We think the rule ap-
plies in this case; for do we not announce a proposi-
tion hitherto accepted and acted on by the bar *nisi*,
when we say that when both sides ask a new trial,
and one is granted to either, both are bound by the
order, and an appeal will not lie? . . . ''

We have reached the conclusion that appellants are
not in position to insist that the lower court erred in sus-
taining the motion for a new trial.

The next ground argued by appellants for reversal
is that the verdict of the jury is not sustained by the evi-
dence. The evidence is discussed at great length by
counsel for appellants, and it may be that his argument
would have convinced us that his position is correct if we
had been members of the jury that tried the case.

Proof was taken in an effort to show that the quan-
tity of hemp claimed by appellee could not have been
stored in the space where the witnesses for appellee testi-
fied that it was stored. The cubic contents of a bale of
hemp is established and the cubic contents of the space
where the hemp was stored is also established, and appel-
lants attempt to show that it was a physical impossibility
to place within the space where the hemp was stored the
quantity of hemp which appellee claims he lost. Mathe-
matical calculations are set up and geometrical demon-
strations are attempted. The difficulty about it is that
the basis of the calculations by appellants and by
appellee is not the same. The quantity of hemp was
to be determined from the evidence of the witnesses, and
as none of them actually weighed the hemp it was largely
a question of the opinion of witnesses who were familiar
with such matters. Appellee testified that he actually
had 150,827 pounds of hemp and more than 10,000 pounds
of tow, and in this he was corroborated by other wit-
nesses, particularly Henry Quisenberry, an experienced
man in baling and handling hemp. He baled all of the
hemp which was in the barn. It is shown that the hemp
weighed about 550 pounds per bale, and that the tow
weighed from 400 pounds to 450 pounds per bale. One
of the witnesses stated that the space where the hemp
was stacked in the bale would hold 308 bales, but he had

not seen the hemp in the barn. Mr. Thomas, agent for one of the appellants, testified that he went to the barn a number of times and that he saw the hemp. Appellee told him how much hemp he had and also showed him his account book where the quantity of hemp had been entered. The book was introduced in evidence. After Thomas had examined the hemp appellee went to his home and obtained the book and brought it to Thomas so that he might examine it. The book showed that he had the amount of hemp claimed by him. Thomas, of course, did not know how much hemp there was, but he stated that it extended out of the shed three or four feet, and was something like fifteen feet high and went about clear back. He thus corroborates the witnesses for appellee. He also stated that at the time he issued the policy he thought the quantity of hemp was there. Nunan, the other agent, did not make an inspection of the hemp, but he did advise with Thomas before issuing the policy in his company and obtained the information which Thomas had.

There was substantial evidence that appellee had the hemp and tow which he claimed, and the jury was the sole judge of whether this evidence should be believed or whether it should accept the evidence or circumstances to the contrary. We do not find any such failure of evidence as would justify us in holding that the verdict of the jury is not sustained by the evidence.

It is insisted by counsel for appellee that appellants cannot rely upon their contention that the quantity of hemp and tow claimed by appellee was not there because the agents upon their own investigation reached the conclusion that the property was of the value claimed by appellee. There are cases holding that where the agent makes his own inspection and investigation of the value of the property to be insured and thereafter issues and delivers a policy, the company may not defeat a recovery on the policy contract on account of representations of the insured that the value of the property was greater than it actually was. Home Insurance Company v. Crowder, 164 Ky. 792; Kenton Insurance Company v. Downs, 90 Ky. 236; Teutonia Insurance Company v. Howell, 54 S. W. 852.

It is unnecessary to determine whether appellants were estopped in this case because of the knowledge of

the quantity and value of the property of the agents. It has been held in a number of cases that such knowledge on the part of the agent issuing the policy estops the company, but in a case like this where the quantity of the material determines its value and where the agent could not possibly know the quantity of the material by a casual inspection or even by a careful inspection, and the agent had to rely upon the statements of the insured as to the quantity, a different rule may prevail. The question is not material in this case, as the evidence of the quantity and value of the material insured was for the jury under the evidence and the instructions of the court.

Another ground urged for a reversal is that the court erred in excluding competent testimony offered by appellants. The witness, G. C. Fluty, was asked to make certain calculations and answer questions as to how many bales of hemp could be stored in a compartment of certain dimensions. The court sustained objections to this evidence, and the avowal was made as to what the witness would state. His answer as made in accordance with the avowal would not have been calculated to influence the verdict of the jury in any way. We do not think the evidence was competent, and if it had been competent it was immaterial. We must assume that juries have ordinary intelligence and are capable of making such calculations, at least when their minds are directed to the point by the argument of counsel. The only other complaint about the evidence urged by appellants is that the court would not allow certain witnesses to state that they had not sold hemp to appellee. The evidence was not competent. The appellee had offered no evidence that he purchased hemp from these witnesses.

Another error relied on by appellants is that the court erred in refusing to give an instruction which would authorize the jury to find for appellant, Sterling Fire Insurance Company, on the ground that appellee had taken out additional insurance without having the written consent of the company indorsed thereon. The testimony of the agent, Thomas, shows, to our minds, that he consented to the additional insurance. He stated that appellee told him that he might get more insurance later on and that he knew appellee expected to obtain additional insurance and that he told him that he could do so. Nunan, the other agent, talked with Thomas before he issued the policy in the National Union Fire Insurance

Company, and he testified that Thomas told him that he thought probably he would get more insurance from appellee. Thomas states that he advised appellee not to take more insurance in amount than three-fourths of the value of the property insured. The reading of the evidence of Thomas and Nunan convinces us that they both knew all about the insurance carried by appellee. Having this knowledge and taking no steps to cancel the insurance is a waiver of the provision in the policy that if insured shall make or procure any other contract of insurance on the property covered, the policy shall be void. This was so held in the case of Phoenix Insurance Company v. Spiers, 87 Ky. 285, 8 S. W. 453, and has been followed in many cases since that opinion was delivered. Where there is a dispute as to whether the agent consented to the additional insurance or whether he had knowledge of the additional insurance then it is a question for the jury, as was held in the case of Northwestern Insurance Company v. Avant, 132 Ky. 106, 116 S. W. 244.

The court did not err in deciding as a matter of law under the proof in this case that the agent had consented to the additional insurance or that he had knowledge of such insurance and took no step to cancel the policy. There is no controversy about the matter, and there was nothing for the jury to decide.

Another ground urged by appellants for reversal is that the appellee kept and operated a gasoline engine in his barn, and also kept gasoline in his barn to be used in operating the engine. The policies contain the usual provision that they shall be void if gasoline be kept, used or allowed on the premises unless by the written consent of the company first obtained.

Appellants rely on the case of Home Insurance Company v. Bridges, 172 Ky. 161, 189 S. W. 6, but that case is not in point. The opinion there was in favor of the insured on the ground that he had gasoline on the premises merely for temporary use, and for that reason the court held that the policy was not void. There was neither allegation nor proof that the agent consented to the keeping of gasoline on the premises or that he had any knowledge that gasoline was kept or used on the premises. Where a policy prohibits the keeping, using or allowing of gasoline on the premises and the insured

violates this provision of the policy by allowing gasoline to be permanently kept or used on the premises without the consent or knowledge of the insurance company, the policy will be voided.

Appellants also rely on the case of Western Assurance Company v. Rector, 85 Ky. 294, 3 S. W. 415. In that case the proof showed that Rector kept gunpowder in the store, and that the agent knew that fact when the application was prepared, but informed Rector that keeping gunpowder for sale would not affect his policy. The court held that the policy was voided notwithstanding the knowledge of the agent that gunpowder was kept in the store at the time the policy was delivered. It is true that the Rector case, so far as we have been able to find, has not been specifically overruled, but it has been impliedly overruled by a long line of cases. The Rector case seems to have held that the question of waiver had not been raised. The opinion so states, but as a matter of fact the question appears to have been raised in the case because the agent who procured the insurance and presumably issued and delivered the policy told Rector that he would not suffer a forfeiture of his policy by keeping gunpowder in his store, and this appears to have been pleaded. If that was a case where the agent took the application for the insurance and sent the application to the company for its approval and the policy was thereafter issued by the company, it might have been well said that the question of waiver had not been raised, but there is nothing in the opinion to indicate that such was or was not the method of procedure. In the case of Kenton Insurance Company v. Downs, 90 Ky. 236, the opinion, which was written by the same judge who wrote the opinion in the rector case, we find that the court apparently departed from the opinion in the Rector case. In the later case the court said:

"It is manifest from the testimony that the agent of the company was on the ground when the policy was issued. He knew the manner in which the buildings were used and occupied, and the representations, if false, came from the agent, and not the assured. It appears that the agent charged more than is usual in ordinary risks, because a part of the building was used as a store, and the fact that there was gunpowder in the store constitutes no defense to the action, the quantity kept not being in excess

of that which the policy provides that 'stores' may keep.''

In the case of Crawford's Administrator v. Travelers" Insurance Company, 124 Ky. 733, the court again considered this point. In that case an accident policy was issued to Dr. Crawford by an agent who had authority to issue the policy and complete the contract. The policy provided that it should be void as to persons over sixty-five years of age. The agent knew that Dr. Crawford was over sixty-five years of age at the time he issued the policy. The court there said:

> "It is not necessary to consider the effect of this plea in rejoinder; for, as we understand the briefs of counsel, the question of the limited powers of the agent, who sold the ticket, is abandoned. But, if not, the principle is so well settled that such an agent, while acting in the apparent scope of his authority, will bind his principal as firmly as could its general officer while acting in that capacity. His knowledge, therefore, respecting any material fact which affects the risk is imputed to the company, and it is estopped from setting it up in defense unless the party dealing with the agent knew of his limited power, and that he was exceeding the power conferred upon him by his principal.''

Many cases from this court are cited in support of the above quotation from the opinion. In the late case of Standard Auto Insurance Association v. Henson, 201 Ky. 230, 256 S. W. 414, the court said:

> "But if the insurer is fully cognizant of all the facts, we cannot say as a matter of law that it relies on the statements in the application; in other words, if with full knowledge of all the essential facts it accepts the premium and treats the insured as a policyholder before a loss, it will be presumed to have waived the forfeiture provisions, and therefore will not be heard to say that the policy is void on that ground, if the insured acted in good faith, even though in some material respects the statements in the application were untrue.''

In so far as the case of Western Assurance Company v. Rector, 85 Ky. 294, 3 S. W. 415, holds that the knowledge

of an agent having authority to issue the policy and complete the contract is not the knowledge of the company, and that such agent cannot waive the provisions in the policy, it is out of harmony with the later decisions of this court and to that extent is overruled.

Where the agent of an insurance company has the authority to enter into the contract of insurance and issue the policy, his act is the act of the company and his waiver of a provision in the policy is a waiver by the company. His knowledge is the knowledge of the company and the company is, therefore, bound by his acts.

We find no error in the rulings of the court in the instructions given or offered. They were clear, and well presented the law of the case.

What we have said disposes of the contention of appellants that the court erred in failing to sustain appellants' motion to strike out certain portions of the reply.

Judgment is affirmed.