## Johnson v. Gernert Bros. Lumber Co.

(Decided Oct. 16, 1934.)

W. G. DEARING, E. C. O'REAR and ALLEN PREWITT for appellant.

J. S. LUSCHER for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

The petition in equity of the appellant, Mrs. Della S. Johnson, against the appellee, Gernert Bros. Lumber

Company, seeks the vacation of a default judgment, an injunction restraining the selling of her property under execution, and a new trial. Sections 340, 344, 518, Civil Code of Practice. She appeals from the judgment rendered for the defendant.

A different and stricter rule applies to an action of this kind than to an application to set aside a default judgment rendered at the same term as is pointed out in Cleveland v. Couch, 231 Ky. 332, 21 S. W. (2d) 468. The ground upon which the case rests is something of a blend of the following four grounds provided by the Code:

"Misconduct of jury, of the prevailing party, or of his attorney." Section 340, subd. 2, Civil Code of Practice.

"For fraud practiced by the successful party in obtaining the judgment." Section 518, subd. 4, Civil Code of Practice.

"Accident or surprise which ordinary prudence could not have guarded against." Section 340, subd. 3, Civil Code of Practice.

"For unavoidable casualty or misfortune, preventing the party from appearing or defending." Section 518, subd. 7, Civil Code of Practice.

The appellant's pleading, proof, and argument are that she and her counsel were misled by her adversary's attorney. This is a ground, if established, always recognized as sufficient to entitle a party to a new trial. In deducing it from the statutory delimitation of the right to reopen a case, the word "fraud" is not confined to its vicious import of a wicked motive or deliberate deceit, or an affirmative evil act purposefully conceived, but is deemed sufficiently expansive to embrace merely leading astray, throwing off guard, or lulling to security and inaction, be the intention or motive good or bad, with a resultant advantage to the one and an apparent injustice to the other. So the law is declared to be that if before a judgment was rendered a party plaintiff or his attorney said or did anything that put his adversary off guard, or prevented him from defending the action, and he shows that he had a prima facie valid defense, he is entitled to relief from the judgment. This is on the idea that such conduct operated as a fraud upon his rights. There has been a firm adhesion to this precept. Sibley v. Armstrong, 1 Ky. Opin. 619; Hayden v. Moore,

67 Ky. (4 Bush) 107; McCall v. Hitchcock, 72 Ky. (9 Bush) 66; Martin v. Spurlock, 68 S. W. 396, 24 Ky. Law Rep. 212; Winkler v. Peters, 142 Ky. 83, 133 S. W. 1144; Kingsley v. Daniels, 157 Ky. 194, 162 S. W. 813; Dark Tobacco Growers' Co-operative Association v. Bevins, 216 Ky. 121, 287 S. W. 355.

There is a corollary. The deduction of the chancellor in this case from Douthitt v. Guardian Life Insurance Company, 235 Ky. 328, 31 S. W. (2d) 377, is thus epigrammatically expressed: "It is the duty of a lawyer to watch the case and the litigant to watch the lawyer." Almost but not altogether so. The thought is suggested by appellant's counsel that while the client may be under a duty to do a little "back-seat driving," he is not required to seize the wheel when the provocation is no more than is shown here. But it is the duty of both litigant and attorney to exercise reasonable and due foresight, prudence, and diligence to prepare and to keep up with the case and to avoid surprises and misfortunes. If that is not done, that is to say, if either is negligent, and an adverse judgment results, no relief can be granted. Negligence and surprise do not go together here. If the cause which prevented the appearance of a party or his counsel was such that ordinary care could not have guarded against it, then a new trial should be granted—the showing of a prima facie valid defense being made. McCall v. Hitchcock, supra; Payton v. McQuown, Adm'r, 97 Ky. 757, 31 S. W. 874, 17 Ky. Law Rep. 518, 31 L. R. A. 33, 53 Am. St. Rep. 437; Kirk v. Gover, 96 S. W. 824, 29 Ky. Law Rep. 1046; Louisville & N. R. Co. v. Paynter's Adm'r, 125 Ky. 520, 101 S. W. 935, 31 Ky. Law Rep. 163; Noe v. Davis, 171 Ky. 482, 188 S. W. 457; Kohlman v. Moore, 175 Ky. 710, 194 S. W. 933; Elkhorn Coal Corporation v. Cuzzort, 215 Ky. 254, 284 S. W. 1005; Commonwealth v. Fidelity & Columbia Trust Company, 185 Ky. 300, 215 S. W. 42; McGuire v. Mishawaka Woolen Mills, 218 Ky. 530, 291 S. W. 747; McCommas v. McCawley, 228 Ky. 263, 14 S. W. (2d) 1057; Cleveland v. Couch, supra; Mussman v. Pepples, 243 Ky. 674, 49 S. W. (2d) 592.

The question in this case is under which principle it falls, whether the evidence proves (1) that the plaintiff's attorney agreed to notify the defendant's attorney before he would take further proceedings against his client and thereby misled him, and, if so, whether ordinary diligence on the latter's part would have avoided

the oversight of that agreement; or (2) without the agreement whether either the defendant or her attorney was simply negligent.

Gernert Bros. Lumber Company sued Mrs. Nell M. Petty, her husband, Tilford Petty, Robt. S. Johnson, and his wife, Mrs. Della S. Johnson, on a note for $1,873. Mrs. Johnson promptly employed J. H. Holladay as her attorney and he seasonably filed a demurrer and later an answer interposing the defense of coverture and suretyship. Issue was joined. No defense being made by the other parties, judgment was rendered against them. The case against Mrs. Johnson was set for trial October 31, 1932, and on that day was reassigned to December 19th; then to February 13, 1933; then, according to the record, to March 29th. On that date the order recited that the case being called for trial and the defendant, neither in person nor by counsel appearing, judgment was rendered against Mrs. Johnson. On June 5th following, an execution was levied on her property, and then promptly filed this suit to vacate that judgment and for the relief above stated.

It would seem well, in view of the conflicting evidence upon which the case must be decided, to state it in some detail. On October 31st, the day the case was first set for trial, Mrs. Johnson was present with her witnesses. Geo. G. Buckingham, attorney for the plaintiff, stated he believed he could make the money out of the property of the Pettys, and asked a continuance. Both lawyers agree on this point. But Holladay goes further and says he was insisting on disposition of the case because of the presence of a witness from Bowling Green (Petty) and then that Mr. Buckingham told him, "I don't think we will ever have to try the case," and promised to notify him should he desire a trial. This was communicated to Mrs. Johnson with the assurance that he, Holladay, would in turn notify her. Petty, who heard Holladay's end of the telephone conversation, corroborates him. The Johnsons confirm him as to the information passed on to them. Buckingham does not specifically deny any of this. Some time between that date and December 19th, to which the case was assigned, Mrs. Johnson made inquiry of her attorney concerning the case and was advised not to worry about it as he would let her know when it would come up if ever. Holladay testifies that in the meantime he met up with Buckingham and reminded him that the case was set for

trial December 19th and inquired if he would be ready, and Buckingham again wanted a continuance for, said he, "Like I told you, I don't think we will ever have to try it." Buckingham does not deny this, but says that on December 19th Holladay and his witnesses from Bowling Green were in court and a continuance was agreed upon, and the case was reassigned to February 13th because at that time "We still hadn't settled this property or sold the property." Holladay and Mrs. Johnson say she was never in court and that she knew nothing about any trial being set for that date, since she was obeying the admonition of her lawyer and paying no more attention to the case until he should be heard from.

The foregoing is of value only as it may throw light upon what was done on February 13th, for the crucial evidence relates to that. Holladay's testimony is that some time before that day he again discussed the case with Buckingham and this conversation was had:

> "Mr. Buckingham said, 'Well I still don't think the case will be tried, but,' he said, 'if it is tried, I will let you know.' I said 'Why don't you remand the case then, Mr. Buckingham?' He said, 'I will attend to it.' He said, 'If the case ever comes up, if it is necessary to try the case I will notify you in time.' I said, 'All right,' and relied on what he said."

Therefore, he did not go to the courtroom on February 13th, and had no knowledge that Buckingham had had the case reassigned to March 29th. He rested from that time on upon Buckingham's assurance that he would notify him should he desire a trial. That notice was never given as everybody admits. On that day Petty came again from Bowling Green as a witness and he says Holladay apologized for failing to advise him not to come because of the previous agreement that there would be no trial. From the continuance of October 31st, Mrs. Johnson blissfully remained in profound repose until suddenly awakened months later by the sheriff coming to sell her home. Buckingham's testimony is in effect that he never on any occasion told Holladay that he would notify him when the case would be set for trial. He states he was ready on that day, February 13th, and that Holladay asked a continuance because his witness from Bowling Green had failed to come. He

first said that Holladay was present in court when the case was reassigned to March 29th, but later stated he was not sure whether he was present or had telephoned him. He admits that upon all other occasions it was he who had requested the continuances because he thought he could make the money for his client out of the Petty property.

On March 9th Holladay left the city in some federal government employment. Except for a day or so about the 1st of April and June, he was away until June 30th. But he maintained his office and left his business in the hands of other reputable lawyers to whom he gave full information about his cases. However, he did not include this one, and two or three others, as he says, because of his agreements with counsel. As stated, it was on March 29th that the default judgment was taken against his client.

The memories of these gentlemen are on trial. The problem is to determine which functioned better as to the matter under inquiry. It appears to us that the circumstances, supported by corroborative testimony of two or three witnesses, sustain Holladay's version. Mr. Buckingham's thought that it was the other side who asked a continuance on February 13th because of an absent witness is weakened by the undenied proof that the witness was there. His evidence throughout is hardly as positive as that of the other witnesses.

It is noteworthy that two days after the first continuance on October 31st, the plaintiff had an execution levied on the Petty property and a lis pendens notice filed. Buckingham concedes that he stated to Holladay that he thought the claim could be collected out of the property and that he would try to get it there; also that there was no use trying the case if that could be done, and for that reason he wanted a continuance. He practically admits that there was an understanding that he would let Holladay know whether or not he sold that property and got his money from it. It would be but a step farther, and quite natural, to agree to give him notice should he find it advisable or necessary to proceed with the trial. It appears that the property was sold, but when prior liens were satisfied, it yielded nothing on this judgment. Yet Buckingham never at any time attempted to advise Holladay of that fact.

Holladay's absence from the city seems to have had

little to do with the case, for Buckingham made no effort to reach him or his client, whose telephone number he had in his file and with whom he had talked before the suit was filed. Perhaps had he been there in active practice, his attention might have been attracted to the assignment for trial.

On the other hand, Holladay is corroborated by testimony and circumstances. It is to be remembered that the defendant had promptly pleaded a complete defense, and the proof subsequently adduced on this trial by both parties has shown it to have been practically conclusive. So Holladay not only had a good defense, but was ready for trial upon two former occasions. His conduct and that of the client evinces sincerity and assurance rather than indicates want of diligence. Of course, an attorney is required to take notice of the orders made in his case, and there was an order definitely assigning this one for trial, yet it must not be overlooked that it likewise had been assigned and reassigned definitely and on each previous occasion it had not been tried but continued to enable the plaintiff to make its debt elsewhere. It is conceded the defendant nor her attorney were advised that it had failed. This course of conduct was calculated to induce confidence and composure. Cf. Bowling v. Bank of New Haven, 219 Ky. 731, 737, 294 S. W. 499, 501.

The court has been quite liberal in the matter of new trials when it was made to appear that a party was misled by statements or conduct of opposing party or his counsel and on that account failed to make a defense shown to have been available. The administration of justice in this case would be promoted by setting the judgment aside and having a trial on the merits. A new trial for one is a new trial for both. "It is a loaf baked in the oven of the law, to be sociably shared by both parties. Verily, withal, the benefits of a new trial, like the rain and the dew, descend alike upon the just and the unjust, on defendant as well as plaintiff; the terms 'just' and 'unjust' being used only for the purpose of the simile." National Union Fire Insurance Company v. Forkner, 219 Ky. 119, 125, 292 S. W. 765, 292 S. W. 765, 768.

Our conclusions in respect to the evidence and the law find precedents in the following cases: White v. Richards, 49 S. W. 337, 20 Ky. Law Rep. 1370; Kirk v. Gover, supra; Kingsley v. Daniels, supra; American

Railway Express Company v. Hulen-Toops & Company, 203 Ky. 107, 261 S. W. 889; Dark Tobacco Growers' Co-operative Association v. Bevins, supra; Hackney v. Charles, 220 Ky. 574, 295 S. W. 869.

The judgment is reversed with directions to grant the prayer of the petition.