## Millett v. Swift, &c.—Duffield v. Same.

Appeal from Whitley Circuit Court.

W. T. Davis, Circuit Judge.

From the judgment, Millett and E. E. Duffield appeal.—Reversed.

1. Railroads—Mechanics' Liens—Proceedings to Perfect—Necessity for Filing of Statement.—Ky. St. section 2492, provides that persons "about to furnish material for a railroad may have a lien thereon by filing in the clerk's office of the county a statement in writing that he has so undertaken and expects to furnish material, etc. Held, that the filing of the prescribed statement is a prerequisite to the lien, and the mere subsequent filing of a statement of articles already furnished with a claim of lien therefor is of no avail.

2. Garnishment—Liability of Garnishee.—Where an attachment was sued out against a subcontractor and served on the contractor as garnishee, the contractor was liable only to the extent of the amount due from him to the subcontractor and, he having assumed payment of a note of the subcontractor which was past due when the attachment issued, he was entitled to credit for the amount paid by him in satisfaction thereof.

3. Assignments—Effect.—Where a subcontractor gave an order on a contractor to pay certain notes to a given amount out of the subcontractor's estimates, and the contractor accepted the order, provided there should be anything due the subcontractor on a final estimate, it operated as a transfer

of the fund from the subcontractor to the assignee, and, the order covering all estimates and the acceptance binding the contractor to the assignee if the amount of the order should be owing to the subcontractor on a final estimate, it was immaterial that there had been previous estimates.

4. Garnishment—Liability of Garnishee.—Where an attachment was sued out against a subcontractor and served on a contractor as garnishee, the attaching creditor stood in the shoes of the subcontractor, and acquired only such rights as he had against the contractor at the date of the attachment, and, the subcontractor having previously given a valid order on the contractor to a third person, in good faith, which was accepted by the contractor, the holder of the order had priority over the attachment.

5. Interpleader—Judgment.—In an interpleader action, it was error to adjudge the interpleader to pay to the court's receiver the sum in his custody, and also to render personal judgment against him in favor of a claimant for its debt and cost, since two judgments were thus entered against him for the same money.

6. Interpleader—Interest.—Where an interpleader did not pay the money in his hands into court when ordered to do so, but kept and used it, he should be compelled to pay interest thereon.

E. L. STEPHENS for appellant Millett.

P. W. HARDIN for appellant Duffield.

TYE & SILER for appellees Jellico Grocery Co.

FAULKNER & SHARP for appellees Jellico Hardware Co.

OPINION OF THE COURT BY JUDGE HOBSON—Reversing.

On June 5, 1907, P. J. Millett entered into a contract with the Louisville & Nashville Railroad Company to construct for it six miles of roadbed in Whitley county. T. J. Swift entered into a contract with Millett, by which he was to construct about two miles of the road. The panic of 1907 came on. Swift had great difficulty in raising money to carry on his work,

and Millett was also hard run.    E. E. Duffield was
Swift's walking boss, and he lent Swift $1,000, which
Swift used in carrying on his work.   In the spring of
1908, Swift borrowed from a bank $1,000, and Millett
went his security, as Swift was again out of money,
and this was the only way that Millett   could help
him.   Swift also owed Duffield over $400 on wages.
On July 15th, Swift executed to Duffield the follow-
ing order on Millett:  "Pollyton, Ky., July 15, 1908.
Mr. P. J. Millett, Catliff, Ky.—Please pay to E. E.
Duffield the following notes to the amount of $1458.42
(fourteen hundred and fifty-eight and 42-100) out of
my estimates, and oblige, T. J. Swift, per T. F. Mc-
Connell."   Millett accepted the order by the follow-
ing letter:  "Pollyton, Ky., July 16, 1908.  Mr. E. E.
Duffield, Pollyton, Ky.—Dear Sir: Answering your
letter of the 15th inst., can say that I will give you
credit for the amount of the order, $1458.42, provided
there is anything due Mr. Swift.  I have charged the
amount to his  account subject to a final estimate.
Yours very truly, P. J. Millett.  J. C. Ryan."    On
August 3, 1908, the Jellico Grocery Company filed
in the Whitley Circuit Court an action against Swift
to recover $1,161.03 which he owed it, and took out a
general  order of attachment, which was served on
Millett as garnishee.  On August 7, 1908, Swift gave
to Jellico  Hardware Company an order on Millett
directing him to pay it $1,180.05 which he owed it.
Millett accepted this order practically in the same
way as the Duffield order.  On August 28, 1908, the
hardware company filed in the office of the clerk of
the Whitley county court a statement of the articles
furnished Swift, and asserted a lien on the railroad
property.  After the attachment was taken out, Swift
was unable to carry on his work, and Millett had to

take charge of it and finish up his subcontract. The final estimate did not come in until October, and it was then learned that there was only $1,681.24 due from Millett to Swift.    He thereupon brought an action in which he set out the above facts, and asked the direction of the court as to how the money should be paid. The suit was consolidated with the other actions which had in the meantime been brought. The circuit court in substance adjudged the  hardware company a first lien, and also  entered a judgment against Millett in favor of the grocery company for its debt and interest.   From this judgment P. J. Millett and E. E. Duffield have appealed.

The first question is as to the lien of the hardware company.  Section 2492, Ky. St. provides:  "All persons who perform or furnish labor, material, supplies or teams, for the construction or improvement of any canal, railroad, turnpike,  or other public improvement in this commonwealth by contract, expressed or implied, with the owner or owners thereof, or by subcontract thereunder, shall have a lien thereon,  and upon all of the property and franchise of the owner or owners thereof, for the full contract price of such labor, material, supplies and teams so furnished or performed, which said lien shall be prior and superior to all other liens thereafter created thereon; but any person undertaking or expecting to perform or furnish labor, material, supplies or teams, in the manner provided in this section may acquire a lien therefor, as herein provided, by filing in the clerk's office of each county, wherein he shall have so undertaken to perform or furnish labor, material, supplies or teams, a statement in writing stating that he has so undertaken and expects to perform or furnish labor, material, supplies, or teams, and the price  at

which the same is to be furnished and the lien for
labor performed, material, supplies or teams furnish-
ed thereafter shall relate back and take effect from
the date of the filing of such statement; provided that
as to all original construction such lien shall be prior
to all liens theretofore or thereafter created on the
part so constructed, and on no other part.'' The
hardware company did not file with the clerk the
statement referred to in this section, and its fail-
ure to file the statement is fatal to its claim of a lien.
The plain provision of the statute is that the person
furnishing the material for the construction of a
railroad shall have a lien thereon and ''may acquire
a lien therefor as herein provided by filing in the
clerk's office'' the statement provided for. We had
this precise question before us in the case of Trust
Company v. Casey, 115 S. W. 780. In that case, re-
ferring to the act of 1896, which introduced into the
statute the words referred to, we said: ''Under the
amendment the lien is superior to all liens theretofore
or thereafter created; but it does not relieve the
claimant of the necessity of filing a statement of his
intentions to erect the improvement, in order that
he may have priority over liens thereafter created.''
The case of Central Trust Company v. R. N. & I.
R. R. Co., 68 Fed. 90, 15 C. C. A. 273, 41 L. R. A.
458, was decided in the year 1895, and before the act
of 1896 was passed. The original act provided how a
lien might be acquired in such cases, and the purpose
of the amendment was manifestly to modify the ex-
isting statute as to how the lien might be acquired.
The language used shows that the act was drawn for
this purpose and no other matter is referred to. By
the act of 1896, sections 2463 and 2492 of the Ken-
tucky Statutes were both amended so as to read as

they do now, and the difference in the language used is conclusive that  a difference in meaning was intended.    We therefore conclude that the hardware company acquired no lien here by filing its statement in the clerk's office on August 28th after the other liens had attached.

To adjudge a lien on the railroad which Millett or his· subcontractor, Swift, had constructed,   was   to adjudge a lien on his work.   To adjudge a lien on his work was to  adjudge it against him, for he would have to remove the lien as between him and the railroad company.   So the judgment in effect holds him liable beyond the amount due by him to Swift.   This under the record cannot be done.   He is not liable beyond the amount due Swift, $1,681.24.   The purpose of the amendment was to protect the contractor in the case of a subcontract.    The circuit court probably credited Millett by the $1,000 note which he had paid to the bank.   He had assumed this debt.  It had become his debt, and was past due when the attachment issued.   The order to Duffield, having been accepted by Millett, operated as a transfer of the fund from Swift to Duffield, and a promise on the part of Millett to pay Duffield according to the acceptance.   It is entirely  immaterial that there had been  previous estimates.   The order of Swift covered all estimates, and the acceptance by Millett bound him to pay Duffield his debt, if there was that much coming to Swift on a final estimate.   The reason that this was done is very clear under the proof.   Millett had been paying Swift's pay roll since May or June.   He was at the same time carrying the $1,000 note for him.    On July 15th Swift was indebted to Millett $140.80, and, in addition, whatever pay roll he had. While   a   check appears on July 25th for $1,706.10

charged to Swift, he is credited by this check on the next page as not used. Swift knew how Millett had accepted the order to Duffield, and knew it was to be paid out of his final estimate; for there was no other way for it to be paid in the condition of things. The railroad company was holding back ten per cent. on all his work, and he could not expect Millett to pay Duffield unless in his final estimate there was that much coming to him. To give the order and acceptance any other construction would be to ignore the facts. If Swift did not do his work, Millett had it to do. Therefore he was trying to pull Swift through, and he could not know how he would stand with Swift until the final estimates were made. The whole transaction was in good faith, and Duffield, holding the older equity, must prevail over the subsequent attachment of the grocery company. The grocery company acquired by its attachment only such rights as Swift had against Millett at the date of the attachment. Swift had given the order to Duffield on Millett, and he knew the situation of affairs. He had no cause of action which he could have asserted against Millett to the prejudice of Duffield, and the grocery company, simply standing in his shoes, cannot recover to the prejudice of Duffield.

The circuit court erred in adjudging Millett to pay to the receiver $1,681.24, with interest, and in also giving a personal judgment against him in favor of the Jellico Grocery Company for its debt and cost. Two judgments were thus entered against him for the same money. Millett did not pay the money in his hands into court. When ordered to pay it to the receiver, he did not obey the order. He has kept and used the money, or has had the use of it. Under the circumstances he should pay interest on it. On

the return of the case, a judgment will be entered requiring him to pay to the court's receiver $1,681.24, with interest from October 23, 1908.  A judgment will also be entered directing the receiver to pay out of the fund when collected the claim of .E. E. Duffield with interest and cost and to pay the balance of the fund to the Jellico Grocery Company on its attachment, after the payment of the laborers, J. L. Jones, etc., as adjudged by the court in the judgment appealed from.

The judgments directing Millett to pay the money to the receiver and in favor of the Jellico Grocery Company, and the Jellico Hardware Company, and rejecting the claim of E. E. Duffield, are reversed and cause remanded for a judgment, and further proceedings as above indicated.

Nunn, J.  I dissent from so much of the opinion as defeats the lien of the hardware company for material furnished to construct the road.  It was not necessary to file notice of its intention to furnish the material to protect  itself against secret or pocket liens.