## Commonwealth, By, et al. v. Fidelity & Columbia Trust Company, Executor Ewald's Estate.

(Decided October 7, 1919.)

### Appeal from Jefferson Circuit Court (Chancery Branch, Second Division).

1. New Trial—Casualty or Misfortune—What is.—The unavoidable casualty or misfortune that would authorize the granting of a new trial means some casualty or misfortune growing out of conditions or circumstances that prevented the party or his attorney from doing or having done something that except for the casualty or misfortune would have been done and it does not include mistakes or errors of judgment growing out of a misconstruction or misunderstanding of the law, whether it be found in the form of statutes or court opinions or the failure of parties or counsel through mistake to avail themselves of remedies which if resorted to would have prevented the casualty or misfortune asserted.

2. New Trial—Casualty or Misfortune—Overruled Opinion.—Where a judgment was entered in conformity to an opinion of this court the fact that subsequently and in another case this opinion was overruled did not authorize the vacation of the judgment so entered on the ground of casualty or misfortune in a suit brought under section 518 of the Code after the overruled opinion had been handed down.

3. Judgment—Conclusiveness of.—A matter once litigated and determined finally can not be relitigated between the same parties.

CHARLES H. MORRIS, Attorney General, for appellant.

HUMPHREY, CRAWFORD, MIDDLETON & HUMPHREY and CHARLES W. MILNER for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE CARROLL— Affirming.

Previous to 1911 the Commonwealth instituted proceedings in the Jefferson county court to assess against L. P. Ewald and his estate various items of personal property alleged to have been omitted by him from assessment for the years 1904-5-6-7-8 and 9. Among the items so alleged to have been omitted was a large sum of cash on deposit in St. Louis banks.

For some reason this record is singularly free from anything that would show the date when motions or pleadings were filed or orders or judgments entered, but

we find from the briefs that in March, 1911, a judgment was rendered in the Jefferson county court in these cases assessing certain specified personal property of Ewald for the years 1904-5-6-7-8 and 9. The judgment does not show what precise disposition the court made of the effort of the Commonwealth to assess the money alleged to have been in the St. Louis banks, but as it is silent on this subject it must be considered as conclusive of the fact that the court found that this St. Louis money was not subject to assessment or taxation in Jefferson county.

No appeal was prosecuted from this judgment nor does it appear that any motion was made to vacate or modify it, nor were any proceedings instituted for the purpose of setting it aside until April, 1917, when the Commonwealth filed in the county court a petition to vacate and modify it. In this petition it is stated that during the pendency of the suit in which the judgment was rendered there was a suit pending in the Lyon circuit court seeking to assess for the year 1910 a large sum of money in bank, which is the same money that was sought to be assessed in the action in which the judgment was rendered; that this case having been brought to the Court of Appeals, that court in an opinion reported in 140 Ky. 692, and extended in 142 Ky. 465, held that the money in bank sought to be assessed was not the property of Ewald individually on September 1, 1906, and September 1, 1907, but was the property of the Ewald Iron Company on each of said dates and therefore assessable in Lyon county, the home of the Ewald Iron Company; that soon after these opinions were handed down and on March 1, 1911, the attorneys for the Commonwealth and the county court of Jefferson county construed them as holding that the money in the St. Louis banks was not subject to assessment in Jefferson county in the name of Ewald for the years 1906 and 1907 and consequently the judgment of March, 1911, so provided; that thereafter in another suit seeking to assess this money it was held by this court in an opinion handed down in 1916 and reported in 168 Ky. 71, that this money was subject to assessment in Jefferson county as of September 1, 1906 and 1907, thus in effect overruling its prior opinion.

Therefore it was prayed that the judgment of the Jefferson county court be vacated and the cash in bank

alleged to have been omitted from assessment in September, 1906, and September, 1907, and which it was sought to assess in the suit in which the judgment was rendered be assessed in Jefferson county for each of those years.

In other words it is sought to vacate the judgment of the Jefferson county court entered in March, 1911, upon the ground that the county court and the attorneys for the Commonwealth were misled by the opinions of this court into the belief that this money sought to be assessed in Jefferson county for 1906 and 1907 was assessable for those years in Lyon county and not Jefferson county, and therefore the judgment sought to be vacated did not assess this money in Jefferson county; that after more than five years had elapsed the Court of Appeals decided that this money was assessable in Jefferson county and not Lyon county; that the construction placed on the opinions of this court in 140 and 142 Ky. by the county court and the attorneys for the Commonwealth constituted unavoidable casualty or misfortune within the meaning of section 518 of the Civil Code authorizing a new trial to be granted "for unavoidable casualty or misfortune."

The county court in which this suit to vacate the judgment was brought ruled that the 1911 judgment was a bar to its maintenance and that the facts stated in the petition to vacate it did not constitute unavoidable casualty or misfortune within the meaning of the Code, and the circuit court on appeal having ruled the same way the Commonwealth brings the case here.

It is conceded that the judgment of the county court rendered in March, 1911, failing to assess the money sought to be assessed in the suit in which that judgment was rendered for the years 1906 and 1907 was a final and conclusive adjudication of the fact that this money was not assessable in Jefferson county for the years 1906 and 1907, unless it should be vacated in this proceeding. It is also conceded that the only ground upon which the vacation of this judgment is sought is that the court rendering it and the attorneys for the Commonwealth were misled by the opinions of this court into the belief that the money sought to be assessed in the cases in which the judgment was rendered was not assessable in Jefferson county but in Lyon county.

So that the question to be decided here is, did the fact that the lower court and the attorneys for the Com-

monwealth were misled by the opinions in 140 Ky. and 142 Ky. into the belief that this money was not subject to assessment in 1906 and 1907 in Jefferson county and for that reason it was not assessed and the fact that this court five years later in the 168 Ky. case held that it was, constitute such casualty and misfortune in the meaning of the Code as would authorize a vacation of the judgment rendered in the suit brought for that purpose soon after the opinion in 168 Ky. was handed down?

This question seems to have been decided by this court in Jellico Hardware Co. v. Pine Mountain Railroad Co., 180 Ky. 118. In that case it appears that this court in the case of Millett v. Swift, 138 Ky. 408, decided in 1910, held that the Jellico Hardware Company was not entitled to a contractor's lien because it had failed to comply with certain requirements of the statute and on a return of the case to the lower court a judgment was entered in conformity to the opinion holding that the hardware company was not entitled to a lien.

Afterwards this court in the case of Grigsbey v. Lexington & Eastern Railway Co., 150 Ky. 557, in effect overruled the opinion in the Millett case holding that the hardware company did not have a lien, and after the opinion in the Grigsbey case was handed down the hardware company brought a suit asking a new trial under section 518 of the Code upon the ground that the judgment denying the hardware company a lien on the railroad property was entered because of the erroneous construction given to this court's opinion in the Millett case by the lower court and the parties to the action, and that neither the parties nor their attorneys discovered the mistake of the court until the rendition of the opinion in the Grigsbey case. In holding that the hardware company was not entitled to have the judgment vacated this court said: "Here no appeal from the judgment complained of has ever been prosecuted. The grounds for which a new trial may be granted under section 518, Civil Code, are as follows: (1) Cause prescribed in section 344; (2) proceedings against defendants constructively summoned, as prescribed in chapter 1, title 10; (3) misprisons of the clerk; (4) fraud practiced by the successful party in obtaining the judgment; (5) erroneous proceedings against a person under disability; (6) death of one of the parties before the judgment in the action; (7) unavoidable

casualty or misfortune preventing the party from appearing or defending; (8) errors in a judgment shown by an infant within twelve months after arriving at full age. as prescribed by section 391. Here appellant does not rely upon fraud practiced by the successful party in obtaining the judgment, nor does it allege that it was prevented from defending by unavoidable casualty or misfortune. Its sole ground for a new trial is that by mistake of the parties and the trial court, an erroneous judgment was rendered. It is therefore clear that the ground relied on for a new trial is not one of those embraced in section 518, *supra*. On the contrary, it is well settled that the failure of the court to render judgment in conformity with the law is an error which can be remedied only by direct appeal from that judgment and not by the statutory action for a new trial under Civil Code of Practice, section 518."

The unavoidable casualty or misfortune that would authorize the granting of a new trial means some casualty or misfortune growing out of conditions or circumstances that prevented the party or his attorney from doing or having done something that except for the casualty or misforune would have been done, and it does not include mistakes or errors of judgment growing out of a misconstruction or misunderstanding of the law, whether it be found in the form of statutes or court opinions, or embrace the failure of parties or counsel through mistake to avail themselves of remedies which if resorted to would have prevented the casualty or misfortune asserted.

That this provision of the Code should not be enlarged to embrace a state of case such as is here presented seems very plain. It is not an uncommon thing for courts of last resort to overrule their own opinions, but when a former opinion is overruled in a subsequent case this does not in any way affect proceedings taken and had under the overruled opinion in the case in which it was handed down or in other cases. What has been done remains exactly as it would have remained if the opinion had not been overruled.

Thus in Thompson v. Louisville Banking Company, 21 Ky. Law Rep. 1611, where it was sought in this court to obtain a reversal of certain judgments upon the ground that in other cases the court had overruled the opinions on which the judgments appealed from were rested, the

court in denying relief on this ground said: "The opinion rendered in these cases is the law of the cases, however erroneous it may have been. The fact that it was overruled in a subsequent case between other parties destroys it as a precedent in other cases; but it is nevertheless binding on the parties to this controversy. The rule is elementary that a matter once litigated and determined finally can not be relitigated between the same parties. When these case were returned to the court below that court had no alternative but to obey the mandate of this court, and upon appeal from that judgment this court is as much bound by that mandate as the court below was. If this were not so litigation would be interminable, and a judgment of this court finally settling the rights of the parties would be only the starting point for new litigation."

To the same effect is Masterson v. Masterson, 22 Ky. Law Rep. 1195; Cain v. U. C. Life Ins. Co., 29 Ky. Law Rep 476.

The sound and thoroughly established rule relating to the finality and conclusiveness of judgments would be seriously impaired if a judgment entered pursuant to or in accordance with an opinion of this court might afterwards be opened up, if the opinion under which it was entered was overruled, and everything done under it be again a subject of litigation

If final judgments could thus be set aside no persons claiming under or affected by such judgments could know with certainty what their rights were and the value of the perfect security supposed to follow from the final adjudication of courts would be destroyed.

The judgment is affirmed.