## GREAT NORTHERN RAILWAY CO. *v.* SUNBURST OIL & REFINING CO.

No. 53.   Argued November 11, 1932.—Decided December 5, 1932.

*Mr. J. P. Plunkett,* with whom *Mr. R. J. Hagman* was on the brief, for petitioner.

*Mr. George E. Hurd* submitted for respondent.

Mr. Justice Cardozo delivered the opinion of the Court.

Sunburst Oil & Refining Company, the respondent, brought suit against petitioner, Great Northern Railway Company, to recover payments claimed to be overcharges for freight. The charges were in conformity with a tariff schedule approved by the Railroad Commission of Montana for intrastate traffic. After payment had been made, the same Commission which had approved the schedule held, upon a complaint by the shipper, that the rates so approved were excessive and unreasonable. In this action to recover the excess so paid, the shipper recovered a judgment which was affirmed upon appeal. 91 Mont. 216; 7 P. (2d) 927. The question, broadly stated, is whether the annulment by retroaction of rates valid when exacted is an unlawful taking of property within the Fourteenth Amendment. A writ of certiorari brings the case here.

By a statute of Montana the Board of Railroad Commissioners is empowered to fix rates of carriage for intrastate shipments. The rates thereby established are not beyond recall. They may be changed by the Board itself on the complaint either of shipper or of carrier if found to be unreasonable. Revised Codes of Montana, § 3796. In an action against the Board they may be set aside upon a like showing by a judgment of the court. §§ 3809, 3810. Until changed or set aside, they " shall prima facie be deemed to be just, reasonable and proper." § 3810.

The meaning of the statute was considered by the Supreme Court of Montana in a cause determined in May, 1921. *Doney* v. *Northern Pacific Ry. Co.*, 60 Mont. 209; 199 Pac. 432. A shipper of lumber brought suit against a carrier to recover transportation charges which were alleged to be unreasonable, though they were in accord-

ance with the published tariff. He did this without a preliminary application to the Board to modify the schedule. He did it without a preliminary suit in which the Board, being brought into court as a defendant, would have opportunity to sustain the schedule and resist the change. The court held that until one of these preliminary conditions had been satisfied, no action for restitution could be maintained against the carrier. It coupled that decision with the statement that upon compliance with one or other of the conditions, the excess, thus ascertained, might be the subject of recovery.

The procedure there outlined was followed by this respondent. It filed a complaint with the Board to the effect that the existing tariff for the carriage of crude petroleum distillate was excessive and unreasonable in that the rate of 20½ cents was based upon an estimated weight of 7.4 pounds per gallon, whereas the actual weight is not more than 6.6 pounds per gallon. The Board sustained the complaint. In doing so it ruled, in conformity with the decision in the *Doney* case, that the published schedule prescribed the minimum and the maximum to which carrier and shipper were required to adhere while the schedule was in force, but that by the true construction of the statute the duty of adherence was subject to a condition or proviso whereby annulment or modification would give a right of reparation for the excess or the deficiency. The revision of the tariff was followed by this suit against the carrier, and later by a judgment for the shipper which is now before us for review.

The appeal to the Supreme Court of Montana was heard at the same time as an appeal in another cause involving a like question, and the two were decided together though with separate opinions. *Montana Horse Products Co.* v. *Great Northern Ry. Co.*, 91 Mont. 194; 7 P. (2d) 919; *Sunburst Oil & Refining Co.* v. *Great*

*Northern Ry. Co.,* 91 Mont. 216; 7 P. (2d) 927. The court held that the ruling in the *Doney* case was erroneous and would not be followed in the future; that a rate established by the Commission had the same effect as one established by the legislature; that the statute giving power to the Commission or the court to declare a rate unreasonable was not to be read as meaning that a declaration of invalidity should apply to intermediate transactions; but none the less that the ruling in the *Doney* case was law until reversed and would constitute the governing principle for shippers and carriers who, during the period of its reign, had acted on the faith of it. An opinion handed down upon a motion for rehearing restates the rationale of the decision, and perhaps with greater clearness. 91 Mont. 213, 7 P. (2d) 926; 91 Mont. 221, 7 P. (2d) 929. We are thus brought to the inquiry whether the judgment thus rendered does violence to any right secured to the petitioner by the federal constitution.

The subject is likely to be clarified if we divide it into two branches. Was a federal right infringed by the action of the trial court in adhering to the rule imposed upon it in the *Doney* case by the highest court of the state? If there was no infringement then, did one come about later when the Supreme Court of Montana disavowed the rule of the *Doney* case for the future, but applied it to the past?

■ The trial court did not impair a federal right by giving to a statute of the state the meaning that had been ascribed to it by the highest court of the state, unless such impairment would have resulted if the meaning had been written into the statute by the legislature itself. But plainly no such consequence would have followed if that course had been pursued. The *Doney* case was decided, as we have seen, in 1921. The transactions complained of occurred between August, 1926, and August, 1928. Carrier and shipper understood at that time that

the rates established by the Commission as the delegate of the legislature were provisional and tentative. Valid for the time being the rates indubitably were, a prop for conduct while they stood, but the prop might be removed, and charges, past as well as present, would go down at the same time. By implication of law there had been written into the statute a notice to all concerned that payments exacted by a carrier in conformity with a published tariff were subject to be refunded if found thereafter, upon sufficient evidence, to be excessive and unreasonable. The Constitution of the United States would have nothing to say about the validity of a notice of that tenor written in so many words into the body of the act. Carrier and shipper would be presumed to bargain with each other on the basis of existing law. *Coombes* v. *Getz,* 285 U. S. 434. The validity of the notice is no less because it was written into the act by a process of construction. *Knights of Pythias* v. *Meyer,* 265 U. S. 30, 32. The inquiry is irrelevant whether we would construe the statute in the same way if the duty of construction were ours and not another's. *Knights of Pythias* v. *Meyer, supra,* p. 33. Enough for us that the construction, whether we view it as wise or unwise, does not expose the court that made it to the reproach of withholding from the carrier the privileges and immunities established by the constitution of the nation.

*Arizona Grocery Co.* v. *Atchison, T. & S. F. Ry. Co.,* 284 U. S. 370, holds nothing to the contrary. This court in disposing of that case was not dealing with any question of constitutional law. It was construing a federal statute. Congress had delegated to the Interstate Commerce Commission the power to fix rates and to revoke them. The holding was that the grant of power to revoke did not include by fair intendment a power to invalidate by relation the rates established in the past. The opinion of the court does not speak of the constitution, but

plants itself upon the statute, and from that source and no other derives its energy. In none of its pages is there a hint, much less a holding, that a denial of due process would result from the declaration of provisional rates if the will to make them provisional had been written into the Commerce Act, and written there in advance of carriage and of payment. The essence of such a system is that under it rates can be "experimentally laid down and experimentally tried out." Hutcheson, J., in *Eagle Cotton Oil Co.* v. *Southern Ry. Co.*, 51 F. (2d) 443, 447. The statute of Montana differs in many ways from the act considered by this court. We do not need to ask ourselves the question whether the differences, to our thinking, are important or trivial. There might be no differences at all, and still the meaning of the Montana statute would be a problem for the Montana courts, and not one for us after they had had their say.

■ If the carrier did not suffer a denial of due process through the action of the trial court in subjecting the published tariff to the doctrine of the *Doney* case then standing unimpeached, the petitioner, to prevail, must be able to show that a change was brought about through something done or omitted by the Supreme Court of Montana in deciding the appeal.

We think the posture of the case from the viewpoint of constitutional law was the same after the decision of the appeal as it was after the trial. There would certainly have been no denial of due process if the court in affirming the judgment had rendered no opinion or had stated in its opinion that the *Doney* case was approved. The petitioner is thus driven to the position that the Constitution of the United States has been infringed because the *Doney* case was disapproved, and yet, while disapproved, was followed. Adherence to precedent as establishing a governing rule for the past in respect of the meaning of a statute is said to be a denial

of due process when coupled with the declaration of an intention to refuse to adhere to it in adjudicating any controversies growing out of the transactions of the future.

We have no occasion to consider whether this division in time of the effects of a decision is a sound or an unsound application of the doctrine of *stare decisis* as known to the common law. Sound or unsound, there is involved in it no denial of a right protected by the federal constitution. This is not a case where a court in overruling an earlier decision has given to the new ruling a retroactive bearing, and thereby has made invalid what was valid in the doing. Even that may often be done, though litigants not infrequently have argued to the contrary. *Tidal Oil Co.* v. *Flanagan*, 263 U. S. 444, 450; *Fleming* v. *Fleming*, 264 U. S. 29; *Brinkerhoff-Faris Co.* v. *Hill*, 281 U. S. 673, 680; cf. *Montana Bank* v. *Yellowstone County*, 276 U. S. 499, 503. This is a case where a court has refused to make its ruling retroactive, and the novel stand is taken that the constitution of the United States is infringed by the refusal.

We think the federal constitution has no voice upon the subject. A state in defining the limits of adherence to precedent may make a choice for itself between the principle of forward operation and that of relation backward. It may say that decisions of its highest court, though later overruled, are law none the less for intermediate transactions. Indeed there are cases intimating, too broadly (cf. *Tidal Oil Co.* v. *Flanagan, supra*), that it *must* give them that effect; but never has doubt been expressed that it *may* so treat them if it pleases, whenever injustice or hardship will thereby be averted. *Gelpcke* v. *Dubuque*, 1 Wall. 175; *Douglass* v. *County of Pike*, 101 U. S. 677, 687; *Loeb* v. *Columbia Township Trustees*, 179 U. S. 472, 492; *Harris* v. *Jex*, 55 N. Y. 421; *Menges* v. *Dentler*, 33 Pa. St. 495, 499; *Commonwealth* v. *Fidelity & Columbia Trust Co.*, 185 Ky. 300; 215 S. W. 42; *Mason* v. *Cotton Co.*, 148 N. C. 492, 510; 62 S. E. 625; *Hoven* v.

*McCarthy Bros. Co.*, 163 Minn. 339; 204 N. W. 29; *Farrior* v. *New England Mortgage Security Co.*, 92 Ala. 176; 9 So. 532; *Falconer* v. *Simmons*, 51 W. Va. 172; 41 S. E. 193.[1]  On the other hand, it may hold to the ancient dogma that the law declared by its courts had a Platonic or ideal existence before the act of declaration, in which event the discredited declaration will be viewed as if it had never been, and the reconsidered declaration as law from the beginning. *Tidal Oil Co.* v. *Flanagan, supra; Fleming* v. *Fleming, supra; Central Land Co.* v. *Laidley*, 159 U. S. 103, 112; see, however, *Montana Bank* v. *Yellowstone County, supra.*[2]  The alternative is the same whether the subject of the new decision is common law (*Tidal Oil Co.* v. *Flanagan, supra*) or statute.  *Gelpcke* v. *Dubuque, supra; Fleming* v. *Fleming, supra.*  The choice for any state may be determined by the juristic philosophy of the judges of her courts, their conceptions of law, its origin and nature.  We review not the wisdom of their philosophies, but the legality of their acts.  The State of Montana has told us by the voice of her highest court that with these alternative methods open to her, her preference is for the first.  In making this choice, she is declaring common law for those within her borders.  The common law as administered by her judges ascribes to the decisions of her highest court a power to bind and loose that is unextinguished, for intermediate transactions, by a decision overruling them.  As applied to such transactions we may say of the earlier decision that it has not been overruled at all.  It has been translated into a judgment of affirmance and recognized as law anew.

[1] Other cases have been collected in the writings of learned authors: Von Moschzisker, Stare Decisis in Courts of Last Resort, 37 Harv. L. Rev. 409, 421; Freeman, Retroactive Operation of Decisions, 18 Col. L. Rev. 230; Carpenter, Court Decisions and the Common Law, 17 Col. L. Rev. 593; also 29 Harv. L. Rev. 80.

[2] Cf. Gray, Nature and Sources of the Law, §§ 535–550; Holmes, J., in *Kuhn* v. *Fairmont Coal Co.*, 215 U. S. 349, 371.

Accompanying the recognition is a prophecy, which may or may not be realized in conduct, that transactions arising in the future will be governed by a different rule. If this is the common law doctrine of adherence to precedent as understood and enforced by the courts of Montana, we are not at liberty, for anything contained in the constitution of the United States, to thrust upon those courts a different conception either of the binding force of precedent or of the meaning of the judicial process.

There is still to be considered a question of jurisdiction which has been reserved till this stage of the opinion, for the answer to it becomes easier after a consideration of the merits has brought into clear relief the challenge to the judgment. The first mention of the Fourteenth Amendment to be found in the record is in the petition for rehearing, where also there is a statement that the constitutional question was presented on the first hearing of the appeal and is now renewed and amplified. The answer to the petition for rehearing by counsel for the respondent is also in the record and contains what is in substance an admission that the constitutional point had been duly made at the time and in the manner stated by the moving party. The court in denying the application did so by reference to its opinion on a similar motion in a companion suit decided at the same time (*Montana Horse Products Co.* v. *Great Northern Ry. Co., supra*), and nowhere in that opinion did it contest the statement of counsel that the effect of the Fourteenth Amendment had been argued at every stage. We have then in the record what is in essence the stipulation of counsel followed by the acquiescence of the court. Whether this without more avoids the application of the general rule that a constitutional question is urged too late if put forward for the first time upon a petition for rehearing (*American Surety Co.* v. *Baldwin, ante,* p. 156; *Godchaux Co.* v. *Estopinal,* 251 U. S. 179), we are not

required to determine, for here there is more, and that enough to bring the case within a well-recognized exception. The rule, general as it is, does not extend to cases where the constitutional question, however tardily raised, is considered and decided (*Consolidated Turnpike Co.* v. *Norfolk & O. V. Ry. Co.,* 228 U. S. 326, 334; *Cumberland Coal Co.* v. *Board,* 284 U. S. 23), nor does it apply where the grounds of the decision supply a new and unexpected basis for a claim by the defeated party of the denial of a federal right. *Brinkerhoff-Faris Trust & Savings Co.* v. *Hill,* 281 U. S. 673, 678; *Missouri ex rel. Missouri Insurance Co.* v. *Gehner,* 281 U. S. 313, 320; *American Surety Co.* v. *Baldwin, supra.* This case is clearly within the second of these exceptions, if it is not also within the first. We have seen that the assault upon the judgment is made along two lines. The first is a challenge to the constitutional validity of the ruling in the *Doney* case, and involves a misconception of the decision in *Arizona Grocery Co.* v. *Atchison, T. & S. F. Ry. Co., supra.* The second is a challenge to the constitutional validity of the ruling in this case whereby the statute is adjudged to mean one thing for some cases and another thing for others. This latter objection the petitioner could not make in advance of the event.

The judgment of the Supreme Court of Montana is accordingly

*Affirmed.*