F. OLAZÁBAL & COMPANY, S. en C., Petitioner, v. DISTRICT COURT OF BAYAMÓN, Respondent.

No. 6. Argued June 1, 1944.—Decided July 10, 1944.

*Dubón & Ochoteco*, and *Rivera Zayas & Rivera Cestero* for petitioner. *Ortiz Toro & Ortiz Toro*, and *H. Ramos Mimoso* for interveners, plaintiffs in the main action.

MR. JUSTICE TODD, JR., delivered the opinion of the court.

The primary question in this proceeding is to decide if, as the lower court held, this Supreme Court "did not have authority to determine the retrospective or prospective application in Puerto Rico of the decision in the case of *West Coast Hotel* v. *Parrish*, 300 U. S. 379, as it did in the case of *Irizarry* v. *Rivera Martínez*, 56 P.R.R. 495." Briefly stated, the facts are the following:

Elisa Torres and other workers filed a complaint in the Municipal Court of Bayamón under Act No. 45 of June 9, 1919, regulating minimum wages for women, against Olazábal & Co., S. en C., claiming $8,157.40 as salary earned and not paid because of sewing work done at home; the defendant demurred to the complaint and filed a motion to strike, praying that all claims for salary earned prior to April 19,

1940, be stricken because said work was done under contracts entered into when said law regulating minimum wages was not in force in Puerto Rico. The municipal court sustained the motion and to review this action the plaintiffs filed a petition for certiorari in the District Court of Bayamón, which writ was issued, and after the parties were heard the court entered judgment[1] by which it set aside the order of the municipal court and remanded the case to it for further proceedings. Then F. Olazábal & Co., *S. en C.,* filed before this court a petition for certiorari under Act No. 32 of 1943, which writ we issued because a question of great public interest was involved therein.

The judicial history as to the constitutionality of Act No. 45 of 1919 is very well known. In the case of *People* v. *Alvarez,* 28 P.R.R. 882 (1920), it was decided for the first time that the Act was constitutional and applicable to piece work; in *People* v. *Puerto Rican American Tobacco Co.,* 29 P.R.R. 371 (1921), its constitutionality was ratified and it was decided that it was applicable to work done by contract. Three years later this court, feeling itself bound to follow the decision of the Federal Supreme Court in the case of *Adkins* v. *Children's Hospital,* 261 U. S. 525, decided in *People* v. *Laurnaga & Co.,* 32 P.R.R. 766 (1924), that the Act was unconstitutional and void.

On March 29, 1937—this date is of importance as regards the instant case—the Federal Supreme Court decided the case of *West Coast Hotel Co.* v. *Parrish,* 300 U. S. 379, by which it overruled the *Adkins* case, *supra,* and upheld the constitutionality of an Act of the State of Washington which fixed minimum wages for women and children. Then came in Puerto Rico the case of *Irizarry* v. *Rivera Martínez,* 56 P.R.R. 495 (1940), in which there was involved not only the constitutionality of Act No. 45 of 1919, but also whether it was applicable to work done at home by women. The

---

[1] It is obvious that the court below should have entered in this case an order and not a judgment.

District Court of San Juan had decided *in bank,* 1, that the Act was constitutional in accordance with the case of *West Coast Hotel* v. *Parrish, supra;* 2, that the Act was not applicable to work done at home; and 3, that its declaration that the Act was in force did not have a retroactive character in so far as contracts and rights acquired under the decision in *People* v. *Laurnaga & Co., supra,* were concerned. On appeal this court affirmed the decision as to points 1 and 3 and modified it as to the second point, deciding instead that the Act "is applicable to work done at home with the same force and effect as to work done in shops and factories," and therefore, overruled the case of *People v. Laurnaga, supra.*

The contention of F. Olazábal & Co., petitioners herein, is that Act No. 45 of 1919 having been suspended since the year 1924, when the case of *People* v. *Laurnaga* was decided, until April 19, 1940, when *Irizarry* v. *Rivera Martínez* was decided, the contracts entered into by it with its workers who did work at home, are valid, although they are not in accordance with Act No. 45 of 1919, since in the *Irizarry* case it was held that the new declaration that the said Act was effective was not retroactive. Nevertheless, the lower court held: "That Act No. 45 of June 9, 1919, was again in force on *March 29, 1937,* the date on which the U. S. Supreme Court decided the case of *West Coast Hotel* v. *Parrish. . ."* and "Because this is a Federal constitutional question the Supreme Court of Puerto Rico *did not have authority* to determine the retroactive or prospective character of the application of this decision in Puerto Rico, as it did in the case of *Irizarry* v. *Rivera Martínez, supra."* (Italic ours.)

In the case of *Irizarry* v. *Rivera Martínez, supra,* dealing with this question, the following was said at pages 507 and 508:

"The final question to be considered and decided by us is: When shall the declaration that the Minimum Wage Act is constitutionally

valid and applicable to the work in the shop as well as to the work at home begin to take effect?

Counsel for the defendant Commissioner maintains that the act must be considered to have come into effect as from April 1, 1937, pursuant to the judgment rendered by the U. S. Supreme Court in *West Coast Hotel Co.* v. *Parrish, supra,* reversing the decision in the *Adkins* case, relied upon by this court for its decision in *People* v. *Laurnaga, supra.*

"The decision of the lower court in this particular complies with the law. It is generally held, where a decision of a higher court is reversed, that the reversal means that the decision reversed never existed. No right, therefore, may be alleged as having been acquired under the reversed decision. There is an exception to the rule, however, well established and recognized by all Federal courts, which reads as follows:

" 'Where a constitutional or statute law has received a given construction by the courts of last resort, and contracts have been made and rights acquired under and in accordance with such construction, such contracts may not be invalidated nor vested rights acquired under them impaired by a change of construction made by a subsequent decision.' 7 R.C.L. 1010.

"The application of the above rule to the case at bar seems to us just and equitable. The parties acted and contracted under the decision of this court in the *Laurnaga* case, whereby the Minimum Wage Act was held to be unconstitutional and invalid. When entering into the work contract neither the employers nor the female workers had in mind a minimum wage established by an act that had been invalidated by a judgment rendered by the highest insular court. It would be unfair, under such circumstances, to compel now the employers to pay the difference, if any, between the wages at present paid and those established by the statute. See 85 A.L.R. 262, and 43 F. (2d) 513, 516."

The inferior court in its opinion holds that this conclusion is erroneous, because this court, in deciding a constitutional question, under our Organic Act, does not do it as it is done by a state court of last resort on questions of substantive law, but that it acts as an intermediate territorial court, whose decisions can be reviewed and reversed by both the Circuit Court of Appeals and the Supreme Court of the

United States. It held, therefore, that neither the District Court of San Juan nor this Supreme Court, could give retroactive or prospective effect to the decision in the *Parrish* case, *supra,* and that as soon as it was decided on March 29, 1937, the case of *People* v. *Laurnaga*[2] was impliedly overruled and the Minimum Wage Act was binding on everyone from that date.

The petitioner faces and answers in its brief the question as raised and decided by the court below, quoting, 1, what was said by this court in the *Irizarry* case, *supra,* and 2, the general jurisprudence that the state courts of last resort in reversing their prior decisions can establish the prospective effect of the last decision when they might affect contracts and rights acquired under prior decisions, since in the exercise of that power no constitutional question is involved, as was decided by the Federal Supreme Court in

---

[2] The District Court of San Juan, in deciding the case of *Irizarry* v. *Rivera Martínez*, on August 18, 1937, expressly said:

"Therefore, the *Laurnaga* case is in manifest conflict with *West Coast Hotel Co.* v. *Parrish,* decided by he Supreme Court of the United States. But as the latter court is a court higher than our Supreme Court, it is clear that the conflict can not legally subsist and therefore, the *Laurnaga* case has been impliedly reversed by the last decision of the Supreme Court of the United States.

"But the plaintiffs allege that in order that the Minimum Wage Act be again in effect, it is necessary that the *Laurnaga* case be reversed by our Supreme Court or by the Circuit Court of Appeals for the First Circuit.

"The plaintiffs contend that while this case is not thus reversed, the established precedent is binding upon us and therefore, we can not hold the Minimum Wage Act unconstitutional, because we are forbidden from so doing by said decision.

"As regards the first point, it would be enough to reply that the most includes the lesser, and that as the Supreme Court of P. R. and the Circuit Court of Appeals can reverse the *Laurnaga* case, the Supreme Court of the United States can do it with much more authority, since it is a court higher than any of them, especially as regards a territorial court, like in this case, such as the Supreme Court of Puerto Rico. (*Choate* v. *Spender*, 20 L.R.A. 424–430.)

"* * * * * * *

"Considering now the second point, that is, the assertion made by the plaintiff to the effect that the *Laurnaga* case binds us not to go against its doctrine, it would suffice to say that as a court of general original jurisdiction we should not act as mere automatons in the application of the law and in the study of precedents."

*Great Northern Railway Co.* v. *Sunburst Oil & Refining Co.,* 287 U. S. 358.

To sustain its conclusion the only authority cited by the court below is the case of *González* v. *Bowie,* 123 F. (2d) 387, in relation with *Calaf* v. *González,* 127 F. (2d) 935. The Federal District Court for Puerto Rico had held that the Fair Labor Standards Act was not applicable to workers working in sugar mills during the dead period. In the *Bowie* case, *supra,* the Circuit Court reversed that decision. Then came the case of *Calaf* v. *González,* and it was contended before the Circuit Court that the opinion in the *Bowie* case, *supra,* should apply prospectively because the defendants relied on the property rule established by the inferior court, and as to this point the Circuit Court said at page 938:

"We consider this position to be untenable. Prior to our decision in that case (the *Bowie* case) there had been no interpretation of the applicability of the Fair Labor Standards Act to this set of facts except the decisions rendered by the district court. The district court is in no sense a court of last resort. While judgments of that court are entitled to great weight, they are subject to appeal and reversal. This is particularly true in the case at bar where the issue in doubt is one of statutory construction."

We do not see the similarity that can exist between what was decided in the *Calaf* case, *supra,* and the legal situation raised in the instant one. Certainly what was decided by the Federal District Court for Puerto Rico in the *Bowie* case interpreting the scope of the Fair Labor Standards Act could not be considered as a property rule, since it was not a case reversing a prior decision of the same court and establishing therefore, its prospective effect, and even if it had been so, the decision in the *Bowie* case was subject to be reversed, as it was reversed, by the Circuit Court, and as said by the latter, said District Court "is in no sense a court of last resort." On the other hand, this Supreme Court is one of last resort, since we determine the scope and construction of the local law. It is true that our decisions in constitutional

matters, and in a more limited sense in other cases,[3] are subject to review and reversal by the Circuit Court and the Federal Supreme Court, but that is not the situation with which we are faced in the case at bar.

This court, following the doctrine of the Federal Supreme Court, held the Minimum Wage Act fixing minimum wages for women unconstitutional and later following the new doctrine established by that Court, held it constitutional. Our Act, as such, was not in any manner involved in the *Adkins* case nor in the *Parrish* case, *supra*, and we can not accept, therefore, that the holding of the constitutionality of the Act of the State of Washington in the *Parrish* case had the effect of depriving this court of the power to determine, once the case of *People* v. *Laurnaga* is overruled, the local question as to the date on which our Minimum Wage Act should be considered as going into effect in so far as it can affect contracts and rights acquired under said decision. This determination does not involve any constitutional question, as was decided by the Federal Supreme Court in the *Sunburst Oil & Refining Co.* case, *supra*, where the Court, speaking through Mr. Justice Cardozo, said at pages 364, 365:

". . .This is a case where a court has refused to make its ruling retroactive, and the novel stand is taken that the constitution of the United States is infringed by the refusal.

"We think the federal constitution has no voice upon the subject. A state in defining the limits of adherence to precedent may make a choice for itself between the principle of forward operation and that of relation backward. It may say that decisions of its highest court, though later overruled, are law none the less for intermediate transactions. Indeed there are cases intimating, too broadly (citing cases), that it *must give* them that effect; but never has doubt been expressed that it *may* so treat them if it pleases, whenever injustice or hardship will thereby be averted. (Citing cases.) On the other hand, it may hold to the ancient dogma that the law declared by its courts had a Platonic or ideal existence before

---

[3] See *Castro* v. *Board of Commissioners of San Juan*, decided by the Federal Supreme Court on May 29, 1944.

the act of declaration, in which event the discredited declaration will be viewed as if it had never been, and the reconsidered declaration as law from the beginning. (Citing cases.) The alternative is the same whether the subject of the new decision is common law (citing case) or statute. (Citing cases.) The choice for any state may be determined by the juristic philosophy of the judges of her courts, their conceptions of law, its origin and nature. We review not the wisdom of their philosophies, but the legality of their acts.''

It is our opinion that the declaration of the constitutionality of a statute of ours that this court could make and which decision could be revised on appeal, is different from a decision of this court as regards the prospective or retroactive character of our later decision. In the latter case, no constitutional question is involved. Furthermore, it is a fact that our decision in the case of *Irizarry* v. *Rivera Martínez, supra,* was not appealed.

We realize that the question of the retroactive or prospective effect of a decision reversing a prior one, is one of the most complicated and most widely debated. This was so stated by the Federal Supreme Court in *Chicot County Dist.* v. *Bank,* 308 U. S. 371 (1939),[4] and the question in general has been the subject of discussion and study by several

---

[4] Chief Justice Hughes in said case, although he limited it in deciding a question of *res judicata* that was therein involved, stated the following at page 374:

''The courts below have proceeded on the theory that the Act of Congress, having been found to be unconstitutional, was not a law; that it was inoperative, conferring no rights and imposing no duties, and hence affording no basis for the challenged decree. (Citing cases.) It is quite clear, however, that such broad statements as to the effect of a determination of unconstitutionality must be taken with qualifications. The actual existence of a statute, prior to such a determination, is an operative fact and may have consequences which cannot justly be ignored. The past cannot always be erased by a new judicial declaration. The effect of the subsequent ruling as to invalidity may have to be considered in various aspects,—with respect to particular relations, individual and corporate, and particular conduct, private and official. Questions of rights claimed to have become vested, of status, of prior determinations deemed to have finality and acted upon accordingly, of public policy in the light of the nature both of the statute and of its previous application, demand examination. These questions are among the most difficult of those which have engaged the attention of courts, state and federal, and it is manifest from numerous decisions that an all-inclusive statement of a principle of absolute retroactive invalidity cannot be justified.

commentators.[5] The case stated by Chief Justice Hughes is even stronger, since it deals with the existence of an Act that has been held unconstitutional as an "effective fact." But the prevailing rule is that it is incumbent on the court of last resort to determine which rule it wants to apply. Locally this court has expressed its viewpoint in the case of *Irizarry* v. *Rivera Martínez, supra,* and we have not been convinced that we should change what we decided in that case. On the contrary, it would be unjust to decide now, in 1944, that the contracts entered into from 1937 to 1940 were not covered by what we decided in the *Irizarry* case in 1940, and that on the contrary the petitioner has been bound since 1937, when the *Parrish* case was decided, to consider valid our Minimum Wage Act.

The writ is sustained and the judgment entered by the District Court of Bayamón on February 10, 1944 in civil case No. 2698, *Elisa Torres, et al* v. *Municipal Court of Bayamón,* on certiorari, is vacated, and the case remanded to said court with instructions to enter an order in accordance with this opinion and to remand the case to the Municipal Court of Bayamón so that the case may be tried on its merits and the proper judgment entered.[6]

---

Without attempting to review the different classes of cases in which the consequences of a ruling against validity have been determined in relation to the particular circumstances of past transactions, we appropriately confine our consideration to the question of *res judicata* as it now comes before us."

[5] See Freeman "Retroactive Operation of Decisions" in 18 Col. Law Rev. 230; von Moschzisker "Stare Decisis in Courts of Last Resort," 57 Harv. L. Rev. 409; Frank W. Grinell "Stare Decisis and the Supreme Court of the United States," 27 J. Am. Jud. Soc. 183 (April, 1944); and annotations in 42 Yale Law Journal 779, 48 Harv. L. Rev. 1271.

[6] The instant case is distinguishable from *Compañía Popular de Transporte* v. *District Court,* 63 P.R.R. 116, because in that case the Municipal Court had entered judgment and it corresponded to the District Court to continue taking cognizance of the case on appeal at a trial *de novo* while in the instant one the municipal court only decided a motion to strike, and it was to review that order that resort was had to certiorari.