456 F.2d 357
 79 L.R.R.M. (BNA) 2692, 67 Lab.Cas. P 12,443
 H. & F. BINCH CO. PLANT OF the NATIVE LECES AND TEXTILE
DIVISION OF INDIAN HEAD, INC., Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
 Nos. 376, 377, Dockets 71-1229, 71-1356.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 7, 1972.
Decided Feb. 17, 1972.
 
 Fred W. Elarbee, Jr., Atlanta, Ga. (Lowell W. Olson and Constangy & Prowell, Atlanta, Ga., of counsel), for petitioner.
 Jack H. Weiner, Washington, D. C. (Peter G. Nash, Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel and William Wachter, Washington, D. C., of counsel), for National Labor Relations Board.
 Before FRIENDLY, Chief Judge, and MOORE and OAKES, Circuit Judges.
 FRIENDLY, Chief Judge:
 
 I.
 
 1
 This labor dispute stemmed from the posting by an employer, H. & F. Binch Co. Plant of the Native Laces and Textile Division of Indian Head, Inc. (hereafter Binch), of a new work schedule for its greige mill at Glens Falls, N. Y., late in the afternoon of Friday, March 15, 1968. The notice, signed by Cavanaugh, manager of the greige mill, informed the employees that in order to increase production to fulfill commitments to customers, "effective immediately and until further notice, all departments in the greige mill will work a seven day week schedule. . . ." Each of the three shifts was to get one day off; on those days the other two shifts were to work twelve hours each.
 
 
 2
 It was scarcely surprising that the notice provoked a lively reaction among the then unorganized employees of the raschel (knitting) department, which is in the greige mill. At 8:00 P.M., two hours before the end of their shift, 15, or somewhat less than half, of the employees on the evening shift in the raschel department, acting by prearrangement, met and walked out of the plant in protest, without punching their time cards. Having repaired to a nearby cafe marche was made as a group; when Macey told the strikers they had been replaced, no one inquired whether they all had been or asked to discuss the matter with higher authority. The leaflet prepared immediately thereafter referred to the discharge of all 15 employees, not just of those who had not been replaced. The tenor of the Sunday meeting was similar. The Board concedes that the telegram sent on Tuesday, March 19, see footnote 1, was not an unconditional offer to return to work. The argument is, however, that there was an earlier unconditional offer and the telegram simply served to revoke this. But we do not see any evidence of an earlier unconditional offer; the demand of the workers-by no means an unnatural position-was that all fifteen of the March 15 strikers must be reinstated. The only testimony bearing directly on the strikers' intention, that of Joan Shippe on examination by the general counsel, was that she would have gone back to work on March 16 "[i]f the rest of them had gone back . . . with me." There is no basis for thinking she stood alone.[7]
 
 IV.
 
 3
 The remaining issues concern the validity and applicability of the Board's decision in The Laidlaw Corporation, 171 N.L.R.B. No. 175 (1968), enforced 414 F.2d 99 (7 Cir. 1969), cert. denied, 397 U.S. 920, 90 S.Ct. 928, 25 L.Ed.2d 100 (1970). The Board there held that economic strikers who unconditionally apply for reinstatement at a time when their positions are filled by permanent replacements are entitled, upon departure of the replacements, to reinstatement to their former positions and fringe benefits unless they have acquired regular and substantially similar employment or the employer proves that his failure to offer full reinstatement was for legitimate and substantial business reasons. We agree with other circuits, for the reasons stated by them, that such a decision was a permissible extrapolation from what the Supreme Court had decided in NLRB v. Great Dane Trailers, Inc., supra, 388 U.S. at 26, 87 S.Ct. 1792, 18 L.Ed.2d 1027 and NLRB v. Fleetwood Trailer Co., supra, 389 U.S. 375, 88 S.Ct. 543, 19 L.Ed.2d 614. See, in addition to the Seventh Circuit decision enforcing Laidlaw, American Machinery Corp. v. NLRB, 424 F.2d 1321 (5 Cir. 1970); C. H. Guenther & Son, Inc. v. NLRB, 427 F.2d 983 (5 Cir.), cert. denied, 400 U.S. 942, 91 S.Ct. 240, 27 L.Ed.2d 246 (1970); NLRB v. Johnson Sheet Metal, Inc., 442 F.2d 1056, 1061 (10 Cir. 1971); NLRB v. Hartmann Luggage Co., 453 F.2d 178 (6 Cir. 1971).
 
 
 4
 Binch contends that even if Laidlaw was a permissible decision, it should not be applied so as to require back pay prior to its date, in respect of conduct by an employer which conformed to previously enunciated Board policy. Other courts have rejected that contention. The Fifth Circuit, in an opinion by Judge Wisdom, American Machinery Corp. v. NLRB, supra, 424 F.2d at 1330, quoted our observation in NLRB v. A.P.W. Prods. Co., 316 F.2d 899, 905 (2 Cir. 1963):
 
 
 5
 "[W]hen an administrative agency makes law as a legislature would, it must follow the rule-making procedure . . . and when it makes law as a court would, it must follow the adjudicative procedure . . .; whether to use one method of law making or the other is a question of judgment, not of power."
 
 
 6
 While we are honored by such recognition, we think the problem here is somewhat more serious than in A.P.W. Products. The decision which the Board there applied retroactively had overruled a previous holding that backpay awards were tolled for the period between an examiner's dismissal of a discriminatory discharge complaint and the Board's reversal of him. Clearly no employer had engaged in discriminatory discharges on the faith that if a Board examiner were sometime to rule in his favor he would have no backpay liability for the period between that date and a reversal by the Board. Here, in contrast, the Laidlaw decision established a new norm of employer conduct toward strikers who had sought or achieved reinstatement, cf. NLRB v. Majestic Co., 355 F.2d 854, 860-61 (2 Cir. 1966). Binch, in effect, is saying that the time has come when courts should stop merely shedding crocodile tears over the Board's failure to utilize its rule making power and calling its attention to the Supreme Court's "rather pointed hint" on that subject in the second Chenery case, SEC v. Chenery Corp., 332 U.S. 194, 202, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), and should administer the one kind of medicine the Board will have no difficulty in understanding. Compare United States v. Antonelli Fireworks Co., 155 F.2d 631, 661-662 (2 Cir.), (dissenting opinion of Frank, J.), cert. denied, 329 U.S. 742, 67 S.Ct. 49, 91 L.Ed. 640 (1946).
 
 
 7
 It is indeed surprising that the Board should so consistently have refused to utilize its rule-making power, or to develop techniques of prospective ruling and overruling save in one notable instance where it overdid this. NLRB v. Wyman-Gordon Co., 394 U.S. 759, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969), dealing with Excelsior Underwear, Inc., 156 N.L.R.B. 1236 (1966). Starting with what was only a gleam in Judge Cardozo's perceptive eye,[8] this technique has evolved so that now almost any enunciation of a new doctrine or repudiation of an old one carries, or is shortly given, a tag announcing as of when it speaks. See Schaefer, The Control of "Sunbursts": Techniques of Prospective Overruling, 22 Rec. of Ass'n of the Bar of the City of New York 394 (1967), reprinted in 42 N.Y.U.L.Rev. 631 (1967). It would be unfortunate if the Excelsior fiasco should deter the Board from further experimentation along these lines. See The Supreme Court, 1968 Term, 83 Harv.L.Rev. 7, 226-27 (1969). On the other hand, we do not deem this case an appropriate vehicle for taking the action the company seeks. As Judge Wisdom said in American Machinery Corp., supra, 424 F.2d at 1328, "The Supreme Court's decision in Fleetwood should have demonstrated the erosion of employers' freedom in treating jobless economic strikers as new applicants"; the extension in Laidlaw thus was hardly a great surprise. Also we must weigh the hardship in imposing liability on the company for conduct conforming to what it may reasonably have thought the limit of its duties against the hardship to the employees in being denied important rights that are now recognized to have been properly theirs. We shall therefore await a stronger case before we refuse to give retroactive force to a Board order because it was founded on a decision enunciating a stricter rule of conduct for employers or unions than the Board had previously imposed.
 
 
 8
 The Board's order is modified as indicated in this opinion and, as so modified, is enforced. The parties are directed to endeavor to agree on a form of order; if this cannot be done, it shall be settled on ten days notice. No costs.
 
 
 
 [1]
 THIS IS TO ADVISE YOU THAT ALL THE EMPLOYEES NOW ON STRIKE OFFER TO RETURN TO WORK IMMEDIATELY PROVIDED YOU AGREE TO TAKE EVERYONE BACK WITHOUT DISCRIMINATION. ALL EMPLOYEES ARE WILLING TO RETURN PROVIDED YOU ARE WILLING TO AGREE NOT TO DISCRIMINATE AGAINST ANY WORKERS INCUDING THE RASCHEL WORKERS FOR THE PROTEST WALKOUT CONCERNING THE CHANGE IN WORKING HOURS AND YOUR FAILURE TO DISCUSS SAME
 
 
 [2]
 Chairman Miller dissented from this conclusion, and the consequent holding that the March 18 strike was an unfair labor practice strike
 
 
 [3]
 Chairman Miller dissented from this conclusion insofar as it gave Laidlaw retroactive effect
 
 
 [4]
 The Trial Examiner concluded that even if Binch was not obligated to retransfer Mumblo and Burch to their old jobs upon return of the strikers, it should have offered to reinstate Wilson and Potter in the positions vacated by the transferees. The Board, however, specifically declined to adopt this view; nor is it argued for here. Hence, we see no need to consider it
 
 
 [5]
 Binch suggests that it should not be found to have violated Sec. 8(a) (3) and (1) if it believed in good faith that Davis and Parker constituted replacements. We find nothing in the relevant Supreme Court decisions, NLRB v. Mackay Radio & Telegraph Co., supra, 304 U.S. at 345-46, 58 S.Ct. 904, 82 L.Ed. 1381; NLRB v. Great Dane Trailers, Inc., 388 U.S. 26, 33-34, 87 S.Ct. 1792, 18 L.Ed.2d 1027 (1967); and NLRB v. Fleetwood Trailer Co., 389 U.S. 375, 379, 88 S.Ct. 543, 19 L.Ed.2d 614 (1967), that supports this. Compare International Ladies' Garment Workers Union v. NLRB, 366 U.S. 731, 81 S.Ct. 1603, 6 L.Ed.2d 762 (1961); NLRB v. Burnup & Sims, Inc., 379 U.S. 21, 85 S.Ct. 171, 13 L.Ed.2d 1 (1964). See also Welch Scientific Co. v. NLRB, 340 F.2d 199, 203 (2 Cir. 1965)
 
 
 [6]
 This sufficiently answers the argument made in this court by Board counsel, although not relied on by the Trial Examiner or, as we read its opinion, by the Board, that even if the strikers had made an unconditional offer to return on March 16, Binch would not have accepted any of them. We do not consider anything in our decision in Colecraft Mfg. Co. v. NLRB, 385 F.2d 998, 1005 (2 Cir. 1967), to require a different conclusion. There, among other things, it was suggested that whether the strikers' offer to return to work was unconditional was irrelevant where the employer did not rely on the conditional nature of the offer in denying reinstatement to certain strikers. But in that case, the employer was given notice by telegram of the precise offer to return and had substantial opportunity to assess its position and frame its response; here there was but a brief encounter between the foreman and the strikers. This is not the sort of case in which an offer to return by each striker was unnecessary because the employer had previously made plain that such an offer would be futile. Compare NLRB v. Park Edge Sheridan Meats, Inc., 323 F.2d 956, 959 (2 Cir. 1963). It is not to be assumed that counsel, or even Misogianes, would have approved refusal to reinstate Gatchell and Harding if they had been fully informed of the strikers' precise position and had been given an opportunity to evaluate it
 
 
 [7]
 The Trial Examiner made much of a point relating to Mrs. Shippe's testimony. On recross examination Binch's counsel asked her, "[I]f five of the fifteen had been replaced, then you all wouldn't have taken your jobs?" The examiner overruled general counsel's objection but postponed the answer in order to allow counsel to take a special appeal to the Board. After the Board sustained the ruling, Binch's counsel neither pursued the question with Mrs. Shippe nor asked it of other strikers. We see little significance in this. Apparently Binch's counsel decided on reflection to follow the wise policy of leaving a satisfactory record alone rather than asking that "one more question" which all too often leads to disaster
 
 
 [8]
 See The Nature of the Judicial Process 146-49 (1921); Address to the New York State Bar Ass'n, 1932 N.Y.S.B.A. Report 263, 293-295; Great Northern Ry. v. Sunburst Oil & Refining Co., 287 U.S. 358, 364, 53 S.Ct. 145, 77 L.Ed. 360 (1932)