BETTY BLATT, Plaintiff-Appellant, v. GEO. H. NETTLETON HOME FOR AGED WOMEN, a Corporation, Defendant-Respondent, No. 43487— 275 S. W. (2d) 344.

Court en Banc, February 14, 1955.

*Sam Mandell* and *E. E. Empie, Jr.,* for appellant; *Popham, Thompson, Popham, Mandell & Trusty* of counsel.

**32**

*Clay C. Rogers* and *James W. Benjamin* for respondent; *Rogers, Field & Gentry* of counsel.

[345] COIL, C.—The question here involves the tort liability of a private charitable organization. The facts necessary to a disposition are disclosed by plaintiff-appellant's petition, dismissed on defendant-respondent's motion, and are these:

Defendant owns and operates for profit a four-storied building in downtown Kansas City, the total space of which is leased or rented to various tenants and in which defendant negligently maintained a common stairway for the use of tenants and their invitees. Plaintiff, a business invitee of a third-floor tenant, who had sustained injury while using the common stairway, sued for $15,000 as damages. Defendant, a pro forma corporation organized for charitable purposes,

occupies no part of the building but uses all the profits from its operation for the maintenance and operation of a home for aged women.

Clearly, and it is not disputed, unless defendant is immune from liability by reason of its status as a charitable organization, plaintiff's petition does state a claim on which relief may be granted against defendant. Lambert v. Jones, 339 Mo. 677, 682 [1], 98 S.W. 2d 752, 755 [1, 2].

Plaintiff argues that the doctrine of immunity from liability of charitable organizations in this state was never a correct rule of law; that it resulted from the application of an exception to the usual rules of liability, and that such an exception should never have been created except by legislative act; that present "public policy" demands that the inherent error in the application of the exception be no longer perpetuated; and alternatively that, assuming the desirability of the rule of immunity in former times, the reasons for it have vanished and thus the rule should also vanish. From these premises it is contended that this court should by present decision overrule ·all the prior cases in this state which [346] have granted immunity and hold that charitable organizations are liable in tort in accordance with the established legal principles applicable between claimants and individuals and private corporations not organized and operated for charitable purposes.

Plaintiff also contends that instant case is one of first impression in this state in that the question of whether immunity should be granted under facts like those here has never been adjudicated. With this we agree. And, for reasons to be set forth, we have reached the conclusion that there never has been, and that there should not now be established by court decision, a rule in this state which exempts or would exempt charitable organizations from tort liability where the activity out of which the alleged liability arose is or was wholly unconnected with, and not directly related to, the charitable enterprise for which the particular charity was organized and is operated; and that the fact, standing alone, that all the net profits from a charitable organization's commercial enterprise are used to carry on and accomplish the charitable activities and purposes of the organization, does not constitute or furnish the necessary direct connection or relation to call for the application of the immunity rule.

We examine the Missouri cases to determine what the present Missouri immunity doctrine is. The Missouri cases on the subject are cited in footnote (1).

[1]Adams v. University Hospital, 122 Mo. App. 675, 99 S.W. 453; Whittaker v. St. Luke's Hospital, 137 Mo. App. 116, 117 S.W. 1189; Nicholas v. Evangelical Deaconess Home, 281 Mo. 182, 219 S.W. 643; Roberts v. Kirksville College (Mo. App.), 16 S.W. 2d 625; Eads v. Y.W.C.A., 325 Mo. 577, 29 S.W. 2d 701; Stedem v. Jewish Memorial Hospital, 239 Mo. App. 38, 187 S.W. 2d 469; Dille v. St. Luke's Hospital, 355 Mo. 436, 196 S.W. 2d 615,

The Adams case denied recovery to a patient who sued a hospital (charitable organization) for burns received from hot water bottles having been allegedly negligently placed against him. The Whittaker case denied recovery to a hospital employee who sued the hospital (charitable organization) for injuries received as a result of an alleged defect in a mangle being used by the employee while doing the hospital ironing. The Nicholas case denied recovery from a hospital (charitable organization) sought by a paying patient who was burned as a result of a hospital nurse using carbolic acid instead of alcohol with which to rub plaintiff's back. The Roberts case denied recovery to a paying patient from a hospital (charitable organization) where the evidence tended to establish that plaintiff was negligently burned by a hot water bottle while under the influence of an anesthetic. We shall discuss the Eads case infra. The Stedem case denied recovery from a hospital (charitable organization) by a paying patient injured when a pitcher of hot water tipped over on her due to an allegedly defective pitcher stand; and held that the fact of the existence of liability insurance was irrelevant to the question of liability.

It should be noted in connection with the cases mentioned thus far that the Stedem case did not undertake to examine into the correctness of the doctrine of exemption applicable to the hospital, but confined its ruling to the proposition that the fact of the existence of liability insurance could not create liability if liability did not exist independent of the insurance. The Nicholas case relied upon the conclusions reached in the Adams and Whittaker cases and adopted them as sound. The Roberts case denied liability for the reasons set forth in the Nicholas case.

In the Dille case, Division Two of this court said (196 S.W. 2d 616): "Thus we are not asked to examine into the soundness of the Missouri cases dealing with the immunity of charities from tort liability, but the scope of our review is limited to, and insofar as plaintiff's contention is concerned, the case turns on, a determination of the foundation on which such immunity rests." The court then made an extensive review of the Missouri cases for the sole purpose of determining the foundation of the immunity doctrine as it had been applied in those prior cases. That review was [347] complete, and no purpose will be served to repeat it here. We point out, however, that the court, in the Dille case, conceded that much of the language used in the prior cases did not make clear the theory upon which those prior cases had denied liability. The review there was to resolve the doubt and the Dille case made it crystal clear that Missouri's rule of immunity as theretofore applied was based upon the proposition that broad considerations of public policy made it more desirable in the long run to prohibit the use of money donated for charitable purposes to pay damage claims. Thus, whatever language is contained in the cases prior to Dille which might have been con-

strued as indicating some other theory as the foundation for the Missouri immunity rule, may and should be disregarded.

And so, in all the Missouri cases save Eads, to be presently discussed, the courts went no further than to hold that *hospitals* organized and operated for charitable purposes, and then engaged directly in the conduct of the charitable enterprise for which they were organized, should be immune from tort liability whether that liability was asserted by a beneficiary of the charity, one who contributed to the charity by reason of paying hospital charges, or by an employee of the hospital; because, on the whole, the public would be better served by not permitting charitable donations to be used to pay damage claims. None of those cases announced or attempted to announce a rule of immunity which was to be applied except to the fact situations then before the courts and none of them promulgated an immunity doctrine broader in scope or application than was called for by the facts of each of those cases. And we repeat, in each of those cases, the charitable organization involved, a hospital, was engaged directly in the conduct of the charitable enterprise for which it had been organized and for which it was then being operated.

Thus, in so far as the cases discussed are concerned, Missouri's charitable immunity doctrine was never so absolute or so broad as to cover all situations in which the liability of charitable organizations might be asserted, irrespective of the connection between the organization's activity out of which the alleged liability arose and the charitable enterprise for which the charity was organized.

Did the Eads case change or extend the doctrine as it had been theretofore applied? Plaintiff in that case was an elevator operator-employee in defendant Y.W.C.A.'s six-storied building in downtown Kansas City, the basement, first (except the lobby), and third floors of which were occupied and used by the Y.W.C.A. The second, fourth, and fifth floors were rented to tenants who conducted businesses unrelated to Y.W.C.A. activities. The sixth floor was unoccupied. Plaintiff, who had taken an employee of a fourth floor tenant from the fourth to the third floor (occupied by Y.W.C.A.), was injured when her dress caught on the unguarded prongs of a safety lock which was attached to the inside of the elevator shaft at the third floor. It was there held: that Y.W.C.A. was a charitable institution and that it derived revenue from the rented parts of its building did not destroy its status as a charity; that the *same rule* of exemption applied to a charitable association, like Y.W.C.A., as applied to a charitable hospital; and that "We are not persuaded that it would be the better public policy to abandon the *doctrine heretofore followed* in this state." 29 S.W. 2d 707. (Emphasis present writer's.)

Many authorities were reviewed in Eads demonstrating the conflict among the courts of different states as to immunity from tort liability

of charitable institutions and the various theories were noted upon which immunity, partial immunity, or no immunity were based. In discussing the question as to whether the facts in Eads called for application of the *same rule* of immunity which had been applied in prior Missouri cases it was said: "It is suggested that, even if we adhere *to the rule of exemption followed in the Missouri cases* above referred to, it should not be applied in this case because the building in which plaintiff was hurt was being used largely for the purpose of producing revenue and plaintiff when injured was or just had been serving a tenant rather than a patron of [348] the association. While it is true the elevator served tenants of the building and plaintiff had just taken up an employee of one of the tenants, it is also true that *the elevator was used by the association in direct connection with its charitable work, as its reading and rest rooms were on the third floor. It was at that floor that the alleged defective device was located, and plaintiff had taken the passenger in question, a young woman, to that floor. On the facts presented, it cannot be said that the elevator and the defective appliance which caused plaintiff's injury were not used in connection with and as facilities for the carrying on of the charitable work of the association as much as was the case with the defective ironing machine in Whittaker v. St. Luke's Hospital, supra.* The fact that the elevator also served tenants in the building and that the passenger who had just been taken up happened to be an employee of a tenant rather than a recipient of the benefits of the association, would not, we think, upon the facts shown, justify the application of a rule different from that which would apply had the use of the elevator been confined to portions of the building occupied and used by the association only in the direct carrying on of its charitable activities. Our conclusion is that *under the evidence presented* the Y.W.C.A. is not liable and that as to it the demurrer was properly sustained." (Emphasis present writer's.) 29 S.W. 2d 707, 708.

It would appear that Eads did not change or extend the immunity doctrine as theretofore applied in the Missouri cases. We do not construe it as compelling a conclusion contrary to our holding in the instant case. On the contrary, an analysis of the Eads case (particularly in view of the Dille case which reviewed the Eads case and others, and held that Missouri's doctrine was not based upon the trust fund theory as such but rather upon broad considerations of public policy) demonstrates that Eads did not attempt to extend the doctrine of immunity to a case like the instant one; but held only that the evidence there showed that plaintiff's work as an elevator operator for the Y.W.C.A. in its building was directly related to the conduct of Y.W. C.A.'s charitable enterprise.

There is, however, some language in the Eads opinion at 29 S.W. 2d 706 (1st col.), which, standing alone, might tend to indicate that income from a charitable organization's investments used solely for

charitable activities is impressed with the same "trust" as are original donations. It was there said: "Logically, it seems to us that to take the income in such cases for satisfaction of damage claims would amount to a diversion of trust funds, upon the same principle as would a taking of the property that produced the income. In either instance the practical result would be to deprive the institution of the means wherewith to effectuate the purpose of its organization."

But when this language is examined in connection with the entire opinion and in the light of the Dille case, we think it not contrary to our present holding. This, for these reasons: the quoted language from Eads was used in connection with the refusal of the Missouri court to recognize a distinction made by some other courts whereby recoveries were permitted by *paying* hospital patients and denied to *charity* patients; the language was used upon the assumption that the Missouri immunity doctrine was based upon the "trust fund" theory, when, as explained in the later Dille case, such assumption was not valid; and finally the fact is that the court in Eads treated separately the contention that Missouri's immunity doctrine should not apply "because the building in which plaintiff was hurt was being used largely for the purpose of producing revenue and plaintiff when injured was or just had been serving a tenant rather than a patron of the association", a needless and futile procedure, if the quoted language was intended to announce a doctrine applicable to instant facts. We adhere to our opinion, heretofore expressed, that Eads should not be construed as authority contrary to our present holding; but in so far as Eads may, by implication of certain of its language, be so construed, it should no longer be followed.

[349] Our conclusion is, therefore, that Missouri's charitable immunity doctrine has never been extended to protect funds derived by charitable organizations from commercial enterprises wholly unconnected with their charities. But, even so, should this court now, by present decision, extend the immunity doctrine as heretofore applied to relieve a charitable organization from liability under the present facts? In other words, do the same considerations of over-all public policy which we have heretofore said called for the application of the immunity rule under the particular facts of the prior cases, make it desirable to extend that rule to cases like the present? As was noted in Dille v. St. Luke's Hospital, supra, 196 S.W. 2d 619[2, 3], "public policy" is a vague and uncertain thing, incapable of precise definition. It is unnecessary for us to attempt to define "public policy" or to attempt to state precisely the limits upon our judicial power to declare "public policy." Suffice for proper disposition of instant case to say that we are unwilling to declare that the "public policy" of this state requires the extension of our rule of charitable immunity to cover the factual situation in this case. Here defendant operated a building to produce income. The operation was not con-

38

nected with the conduct of its charitable activity. We are aware of no consideration involved which would permit us to conclude that "public policy" requires that we extend immunity from tort liability to an organization while exclusively engaged in such a commercial venture. We deem it far safer and certainly wiser to apply in this case, and in all others which are not controlled by the existing doctrine of immunity, the usual established rules of tort liability until such time as the legislature may determine that immunity should be granted in this type of case.

In view of our conclusion, it is unnecessary to rule the broader contentions made by plaintiff. Other questions, such as: whether a re-examination of the correctness of the law as it now exists should be made and, if so, whether, as a result of that examination, we could or should wipe out entirely the doctrine of immunity to charities from any tort liability; or whether that re-examination would show that a consideration of the "public policy" on which the doctrine of stare decisis is said to be based, would override the desirability (if we reached the conclusion that the reason for the rule of immunity has now vanished and that the rule should therefore also vanish) of judicially so declaring, and thus require the conclusion that the continuation of the present doctrine is a question for legislative determination; these, and other related questions, we necessarily leave unanswered.

Our holding goes no farther than to rule the specific facts of this case. What activity will or will not constitute the necessary connection with or direct relation to the charitable enterprise for which the particular charity was organized and is operated will depend upon the facts of each case. There will undoubtedly be some borderline cases. Each will have to be determined on its own particular facts. We are convinced, however, that the fact, standing alone, that the net profits from the renting and leasing of a downtown office building, which building is not used in connection with defendant's charitable activity, is not such a direct relation to the enterprise of conducting a home for aged women as to bring this defendant within the charitable immunity doctrine as it exists in this state. And this, even though the ownership and operation of the building may not be ultra vires the charitable corporation.

Reversed and remanded.

PER CURIAM:—The foregoing opinion by COIL, C., is adopted as the opinion of the Court en Banc. All concur.