**Richard SWINFORD, Appellant,**

**v.**

**Ralph A. BLILEY and the Conception Abbey, a corporation, Respondents.**

**No. 57807.**

Supreme Court of Missouri,
Division No. 1.

Sept. 9, 1974.

E. L. Bartram, Hull & Strong, Frank H. Strong, Maryville, for appellant.

Dick Thomson, Beavers, Thomson & Beavers, Maryville, for respondent, The Conception Abbey, a corporation.

WELBORN, Commissioner.

Action for damages for personal injuries arising out of automobile collision. Richard Swinford brought suit against Ralph A. Bliley and The Conception Abbey, a corporation, for damages arising out of a collision between an auto driven by Bliley, an employee of the Abbey, and a parked truck on which plaintiff was loading pipe. Bliley's auto struck a piece of pipe which extended from the truck and the pipe struck plaintiff, causing injuries. Plaintiff's petition alleged that the accident arose out of and occurred within the scope of Bliley's employment. The Conception Abbey by its answer denied that Bliley was acting within the scope of his employment at the time of the accident. The answer also set up the defense of charitable immunity. A summary judgment was entered in favor of the Abbey on that ground. A trial to the court of the claim against Bliley resulted in a judgment in favor of plaintiff for $100,000. Plaintiff then appealed from the judgment in favor of the Abbey.

The accident out of which the cause of action arose occurred on June 24, 1968. Plaintiff's suit was filed on September 30, 1968. On November 10, 1969, the doctrine of charitable immunity was abolished in Missouri. Abernathy v. Sisters of St. Mary's, 446 S.W.2d 599 (Mo. banc 1969); Garnier v. St. Andrew Presbyterian Church of St. Louis, 446 S.W.2d 607 (Mo. banc 1969). The Abbey's motion for summary judgment was sustained on January 27, 1971.

In this court, appellant first complains that the prospective application of the abolition of the charitable immunity doctrine, announced by the court en banc, violates appellant's constitutional rights and departs from the established rule in Missouri of "retrospective application on substantive matters."

In the Abernathy case, the court stated (446 S.W.2d 606[4]):

"* * * We are cognizant of the fact that retrospective application of our decision could result in great hardship to those institutions which have relied on our prior decisions upholding the doctrine of charitable immunity. Therefore, feeling that justice will best be served by prospective application of the decision announced today, we hold that the new rule shall apply to this case and to all future causes of action arising after November, 10, 1969, the date of the filing of this opinion."

This cause of action arose prior to November 10, 1969, and the trial court recognized and gave effect to the Abernathy ruling. Here, appellant contends that to give Abernathy and Garnier the benefit of the abrogation of the doctrine but to deny it to him is a denial of equal protection of the laws and deprives him of property without due process of law. Appellant cites no authority for this proposition. The United States Supreme Court in Great Northern Railway Company v. Sunburst Oil & Refining Co., 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360 (1932), held that the federal constitution imposed no limit upon the states in the determination of whether or not judicial decisions overruling prior decisions are to be given prospective or retrospective application. In that case, the court stated (287 U.S. 364, 53 S.Ct. 148):

"We think the federal constitution has no voice upon the subject. A state, in defining the limits of adherence to precedent may make a choice for itself between the principle of forward operation and that of relation backward. It may say that decisions of its highest court, though later

overruled, are law none the less for intermediate transactions. Indeed, there are cases intimating too broadly ( * * * ), that it *must* give them that effect; but never has doubt been expressed that it *may* so treat them if it pleases, whenever injustice or hardship will thereby be averted."

This position was reiterated in Linkletter v. Walker, 381 U.S. 618 at 629, 85 S.Ct. 1731 at 1737, 14 L.Ed.2d 601 (1965), in which the court stated: "However, we believe that the Constitution neither prohibits nor requires retrospective effect."

In Mapp v. Ohio, 367 U.S 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), the court considered the question of retroactive effect to be given in state court proceedings to decisions of the United States Supreme Court dealing with the rights of defendants in criminal cases. See Annotation: United States Supreme Court's Views as to Retroactive Effect of Its Own Decisions Announcing New Rules, 22 L.Ed.2d 821 (1969). That problem has recurred with the court, but no decision has nullified the Sunburst rule insofar as state court action affecting civil claims is concerned. The fact that the United States Supreme Court has given retrospective application to decisions affecting the substantive right of defendants in criminal cases does not require this court to do likewise in civil cases. Nor does the fact that this court on other occasions has given some retrospective effect to its decisions overruling previous decisions require that such effect be given the Abernathy case.

■ In connection with his constitutional argument, appellant asserts that the Abernathy rule should be re-examined to the extent of applying the Abernathy rule retroactively insofar as liability insurance coverage existed at the time of the accident. No authority is advanced to support this contention as a constitutional proposition. Appellant cites Myers v. Drozda, 180 Neb. 183, 141 N.W.2d 852 (1966), in which the Nebraska Supreme Court, upon abrogating the doctrine of charitable im-

munity, made the new rule applicable prospectively except insofar as insurance coverage existed. In such case the new rule operated retrospectively. That case represents one approach to the question. It is not required by either federal or state constitutional provisions. It is not the approach accepted by the court en banc in Abernathy.

■ Appellant's second contention is that the trial court erred in giving the Abbey the benefit of the charitable immunity doctrine because the Abbey was engaged in activities for profit which precluded its reliance on the doctrine.

On the motion for summary judgment, the trial court had before it in various ways the following facts relative to the nature of the defendant's organization and operation:

The Conception Abbey was organized as a not for profit corporation. Its amended articles of incorporation were approved by the Nodaway County Circuit Court and filed in the office of the Secretary of State of Missouri, June 7, 1915. The objects of the corporation stated in the articles are to conduct a college, a school, a seminary, and other institutions for the advancement of education, a dormitory, an orphanage, and other eleemosynary institutions, and generally to promote the dissemination of useful knowledge, to encourage the practice of all virtues conducive to the well-being of humanity and to alleviate the distress of the unfortunate and suffering. It has the power to receive, hold, own, use and control property in furtherance of its objects; to sue and defend in legal proceedings. It has no capital stock and no provision for pecuniary profit to any members of the corporation.

At the time of the accident here involved, The Conception Abbey was conducting a program of religious training on property owned by it in Nodaway County. It maintained four dormitories, one building for classroom administration, one

building for dormitory and classroom, one building for dormitory and library. It had a church, recreation center, retreat house and faculty quarters. It pays no taxes on its land. It maintained a water reservoir and filtering system to serve its facilities. As of January 1, 1968, it had 183 full-time college students, nine part-time college students and 121 graduate theological students enrolled in its educational program. The students paid $550 per semester for tuition, room and board.

The Conception Abbey has for many years operated a printing plant on its property. It employs from 15 to 17 persons year-round and 22 or 23 college students during the summer. The funds received from the printing operation go into the account of the Abbey. In 1967, the gross sales of the printing plant were $436,564.48; net loss, $82,043.55. Gross sales for 1968 were $522,467.94, net profit $64,838.15.

The Abbey owns or rents more than 1,000 acres of farm land. 200 acres are used for raising corn, beans and wheat. It has a dairy herd, a beef herd and a swine herd. Five persons are employed in the farm operation. Milk produced on the farm is used for consumption at the Abbey, with the surplus being sold. Calves and feeder pigs are sold. In 1967, the gross farm income was $123,260.36; net income, $3,384.29. In 1968, the gross farm income was $136,161.04; net loss $337.42.

The Abbey owns four houses in the town of Conception. Two of them are rented. It has sold houses on the installment plan. Rental and sales proceeds go to the Abbey.

Bliley was employed by the Abbey as assistant superintendent of buildings. His duties included supervision of workers in the seminary buildings and inspection and maintenance of the water reservoir and filtering system. He made a routine inspection of the filtering system each morning and evening. At the time of the accident, he was returning from the evening inspection of the filtering system. The accident occurred on a road within the seminary compound area and on a road providing the only means of ingress and egress from the public road to the seminary compound.

At the time of the accident, plaintiff was engaged in removing a building from the Abbey grounds, under a contract with the Abbey.

A mere statement of the rule relied upon by appellant demonstrates its inapplicability to these facts. Appellant invokes the rule stated in Blatt v. Geo. H. Nettleton Home For Aged Women, 365 Mo. 30, 275 S.W.2d 344 (banc 1955):

"* * * [W]e have reached the conclusion that there never has been, and that there should not now be established by court decision, a rule in this state which exempts or would exempt charitable organizations from tort liability where the activity out of which the alleged liability arose is or was wholly unconnected with, and not directly related to, the charitable enterprise for which the particular charity was organized and is operated; and that the fact, standing alone, that all the net profits from a charitable organization's commercial enterprise are used to carry on and accomplish the charitable activities and purposes of the organization, does not constitute or furnish the necessary direct connection or relation to call for the application of the immunity rule." 275 S.W.2d 346.

The Blatt case involved a claim for personal injuries sustained by an invitee of a tenant of a building owned by the defendant and leased or rented to various tenants. The defendant pro-forma decree corporation occupied no part of the building, but devoted the profit from its operation for its charitable purposes.

Here, Bliley's duties and activities were not "wholly unconnected with, and not directly related to, the charitable enterprise" of the respondent. Appellant so concedes by arguing that Bliley's activities were "directly related, *in part*, to the income pro-

ducing or business activities of the Respondent." Such a relationship does not deprive respondent of its right to rely on the doctrine of charitable immunity in this case. See Eads v. Young Women's Christian Association, 325 Mo. 577, 29 S.W.2d 701, 707–708 (1930), (overruled on another point in Blatt v. Geo. H. Nettleton Home For Aged Women, supra, 275 S.W.2d 348).

The case of Evangelical Lutheran Synod of Missouri v. Hoehn, 355 Mo. 257, 196 S.W.2d 134 (1946), cited by appellant, dealt with the exemption from taxation of real estate owned by a subsidiary corporation of a religious organization on which it conducted a commercial printing enterprise. Such is not the problem here presented.

On the uncontroverted evidence, the trial court was warranted in concluding that respondent was entitled to rely on the claim of charitable immunity.

■ Finally, appellant argues' that, if respondent was entitled to the benefit of the charitable immunity doctrine, it was entitled to benefit "only to the extent that the property of a charitable trust used exclusively for carrying out a charitable purpose is immune from exemption (execution?) under judgment for the tort." This argument calls for the adopting of the limited immunity rule, based on the "trust fund" theory of charitable immunity, followed in some states. Such a view is represented by Anderson v. Armstrong, 180 Tenn. 56, 171 S.W.2d 401 (1943), cited by appellant. See Annotation: Immunity of non-governmental charity from liability for damages in tort, 25 A.L.R.2d 29 (1952); § 19. View limiting execution of judgment to nontrust property, pp. 84–88.

Missouri did not follow that rule. Dille v. St. Luke's Hospital, 355 Mo. 436, 196 S.W.2d 615 (1946); Kreuger v. Schmiechen, 364 Mo. 568, 264 S.W.2d 311, 314[2] (1954). In view of the current status of the charitable immunity doctrine in this state, the prior cases on this particular as-

pect of the question do not require re-examination.

Judgment affirmed.

HIGGINS, C., concurs.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

All of the Judges concur.